[L. A. No. 17888. In Bank.—Sept. 10, 1941.]

COMMERCIAL DISCOUNT COMPANY (a Corporation), Appellant, v. O. L. COWEN, Respondent.

Chapman & Chapman for Appellant.

Fred A. Wilson for Respondent.

THE COURT.—This cause was taken over after decision by the District Court of Appeal of the Fourth Appellate District, not because of any dissatisfaction with the conclusion there announced, but for the sole purpose of deleting certain language from the opinion. Upon further examination of the record, we adopt the opinion of Mr. Justice Marks, with such omissions and additions as hereinafter appear, as and for the decision of this court. It reads:

"Plaintiff brought this action in claim and delivery to recover all motor vehicles, machinery, furniture, office and garage furnishings, fixtures, equipment, cash and checks, and all accounts, notes and contracts receivable at defendant's place of business in Barstow, California. It was alleged that plaintiff was entitled to the immediate possession of this property and had demanded immediate possession from defendant which had been refused. Among other things, the answer put in issue plaintiff's right of possession and its demand for immediate possession. The trial court found in favor of defendant on these issues and entered judgment for him. This appeal followed.

"The determination of this appeal rests largely on the interpretation to be placed on a contract entered into by the parties on March 15, 1937. This contract recites that defendant had three places of business in connection with his motor vehicle business. One was located in San Bernardino, a second in Rialto and a third in Barstow.

"Defendant had become indebted to plaintiff in the sum of $53,000 which it was desired to liquidate. He had a prospective sale or plan of liquidation of the business in San Bernardino and Rialto. He agreed to open an escrow within ten days, having as its object the liquidation of the assets of those places of business. The term of the escrow was fixed at thirty days. A period of sixty days after the closing of the escrow was given within which to proceed with the liquidation, with an option of terminating it at an earlier date given to plaintiff should the operations prove unprofitable.

"A separate section of the contract dealt with the Barstow business. It opens as follows:

"'4. It is understood and agreed that the operations of the said O. L. Cowen business now located at Barstow, California,

shall not be included in the proposed escrow and during the life of this Agreement, said operations at Barstow shall remain the property of the said O. L. Cowen, subject, however, to the following terms and conditions:

" 'In the event of any breach or prior termination of this Agreement, for any reason whatsoever, except by payment in full by the said second party, any and all of the assets of said Barstow operations shall be immediately assigned and transferred to First Party herein for liquidation in any manner and under any process which said First Party may desire; the net proceeds of said liquidation to be credited by said First Party to the indebtedness of said O. L. Cowen, as aforesaid.' Then follow details of the plan for liquidation of the Barstow business which are not material here.

■ "It is well settled in California that 'To sustain an action for the recovery of specific personal property the plaintiff must have the right to immediate and exclusive possession of such property at the time of the commencement of the action, although it is not essential that he should show that he ever had actual possession of it. ■ While plaintiff must have a general or special property in the thing sought entitling him to such right of possession, it is not essential that he be the absolute owner: a special property therein entitling him to such right of possession is sufficient. But whether the right in the property is general or special, it must entitle the plaintiff to immediate and exclusive possession.' (5 Cal. Jur. 160.)

■ "This special property in personalty, with the right to its immediate possession which gives the right to bring an action of this kind, is illustrated by the cases involving chattel mortgages which provide that on default a mortgagee may immediately take possession of the mortgaged property and sell it to pay the debt. It is held that such an agreement gives a mortgagee such special interest in the mortgaged property, and the right to its immediate possession, sufficient to maintain an action for its recovery should the mortgagor, after demand, refuse to surrender possession to the mortgagee. Plaintiff relies strongly on such cases. (See, *Commercial & Savings Bank of Stockton* v. *Foster*, 210 Cal. 76 [290 Pac. 583]; *Riverside Portland Cement Co.* v. *Taft*, 192 Cal. 643 [221 Pac. 357]; *Tuohy* v. *Linder*, 144 Cal. 790 [78 Pac. 233].)

"The theory upon which these decisions rest is that the mortgage and the covenant of the mortgagor to deliver pos-

session of the mortgaged property to the mortgagee for the purpose of sale immediately upon default and demand for possession, gives the mortgagee a special interest and right of immediate possession that will support an action for its possession, after refusal of a demand for possession. The question here is: Does the promise of defendant that the Barstow property 'shall be immediately assigned and transferred' to plaintiff amount to a covenant to deliver possession of that property to plaintiff or is it a promise to do some other act which, when performed, but not before, will give plaintiff the right of possession and special property necessary to maintain this action? The answer to this question depends upon the meaning to be given to the words 'assigned' and 'transferred' which are used in the contract as the measure of defendant's immediate duty under it.

"The word *assign*, in the ordinary legal sense, means to transfer title or ownership of property. (*Burkett* v. *Doty,* 176 Cal. 89 [167 Pac. 518].) The word is usually, but not always, used in connection with the transfer of a thing in action. It may be used to indicate an act whereby title to property is conveyed by one living person to another. (3 Cal. Jur. 233 et seq.; *Offer* v. *Superior Court,* 194 Cal. 114 [228 Pac. 11].)

"Section 1039 of the Civil Code provides that, 'Transfer is an act of the parties, or of the law, by which the title to property is conveyed from one living person to another.' (See, *Scholle* v. *Finnell,* 173 Cal. 372 [159 Pac. 1179]; *Chambers* v. *Lamb,* 186 Cal. 261 [199 Pac. 33]; *Estate of Potter,* 188 Cal. 55 [204 Pac. 826].) In legal phraseology it is commonly used to denote the passing of title in property, usually realty, or an interest therein from one person to another. (*In re Okahara,* 191 Cal. 353 [216 Pac. 614]; *Estate of Steehler,* 195 Cal. 386 [233 Pac. 972].) In *Estate of Peabody,* 154 Cal. 173 [97 Pac. 184], it was said that while the word 'transfer' as used in the Civil Code indicates the passing of title from one person to another, in its ordinary use it has a very general meaning, including the removal of a thing from one place or person to another, the changing of its control or possession or the conveyance of title to it. It is also true that a 'transfer' of property may be effected by delivery of its possession to another. (*Estate of Dunphy,* 147 Cal. 95 [81 Pac. 315].)

"Applying these definitions to the words used in the contract before us we find, if we regard the words 'transferred and assigned', as used in their legal sense, that defendant promised to execute a conveyance of title to the property in question to plaintiff and not to deliver immediate possession to it. Under such circumstances, the right of possession usually follows, but ordinarily does not precede the passing of title. If we adopt the meaning of the words when used in their legal sense we find that defendant promised to execute a document conveying the title of the property to plaintiff, but did not promise to deliver immediate possession to it. On the other hand, if we give to the word 'transfer' its meaning in ordinary use, it might mean either the delivery of possession to plaintiff or the conveyance of title to it.

"A further rule of construction of assistance to us is announced in *Estate of Spreckels,* 162 Cal. 559 [123 Pac. 371], where it is held, in effect, that when a document is prepared by one skilled in the law the word 'transfer' may be synonymous with the word 'convey' and connote the passing of title by a legal instrument. (*Cheda* v. *Bodkin,* 173 Cal. 7 [158 Pac. 1025].) The contract in question was evidently prepared by one skilled in the law. . . .

"Here, the trial judge construed the contract to mean, not that defendant would give immediate possession of the Barstow property to plaintiff for the purpose of sale and liquidation, but that he would execute an instrument conveying title to plaintiff; and that the right of possession would not precede the execution of this document. . . .

"Support is given the construction put upon the contract by the trial judge by the demand served on defendant by the attorney for plaintiff. He did not demand the immediate possession of the property, but made a demand 'for an immediate delivery to said company of your duly executed bill of sale covering the Barstow business'. Where the terms of a contract are uncertain and capable of more than one reasonable construction, the practical construction put upon it by the parties furnishes one of the most reliable means of arriving at their intention when executing it. (*Skousen* v. *Herz,* 135 Cal. App. 116 [26 Pac. (2d) 498].)"

Under the circumstances, we are satisfied that the trial court correctly construed the contract. The right to the immediate possession of the property in question was a condi-

tion precedent to maintaining this action. Plaintiff had no such right of immediate possession. The judgment must therefore be, and it is, affirmed.