AMERICAN FLETCHER MORTGAGE COMPANY, INC., Plaintiff-Appellee,

v.

Dennis L. BASS, Defendant-Appellant.

No. 82–1147.

United States Court of Appeals, Seventh Circuit.

Argued May 11, 1982.

Decided Sept. 14, 1982.

Gary L. Starkman, Arvey, Hodes, Costello & Burman, Chicago, Ill., for defendant-appellant.

Alan H. Goldstein, Dutton, Kappes & Overman, Indianapolis, Ind., for plaintiff-appellee.

Before POSNER, Circuit Judge, DAVIS,* Associate Judge, and COFFEY, Circuit Judge.

COFFEY, Circuit Judge.

This is a review of an order of the United States District Court for the Southern District of Indiana finding the appellant Bass in civil contempt for failing to comply with the district court's order to turn certain assets over to the clerk of the court. On appeal, Bass argues that the order finding him in contempt was in error as it was physically impossible for him to comply with the district court's order since the assets covered by the order previously had been pledged and delivered to his attorneys and a business associate, both of whom had refused his demands to return the property. Bass further argues that his constitutional right of due process of law was violated when the district court found him in contempt of court without proper notice or a full hearing. AFFIRMED.

The defendant-appellant in this action is Dennis Bass, president, shareholder and the

---

* The Honorable Oscar H. Davis, Associate Judge of the United States Court of Claims, is sitting by designation.

sole director of American Investment Properties, Inc. ("AIP"), a Chicago real estate development firm. Bass was held in civil contempt of court in proceedings instituted by the plaintiff-appellee American Fletcher Mortgage Company, Inc., in its efforts to satisfy a judgment against Bass, before the district court of the Southern District of Indiana, Indianapolis Division. The judgment was secured in an action brought by American Fletcher to collect sums of money which had been loaned to Naredel of Texas, Inc.[1] and personally guaranteed by Bass.

The trial began on April 21, 1980. On April 25, in the midst of trial, Bass entered into three pledge agreements, without the consent of the court, whose ultimate result was to encumber essentially all of Bass's assets and put them beyond the reach of American Fletcher:

(1) Bass pledged collateral to his attorneys, Cox, Castle & Nicholson, of Los Angeles, purportedly in consideration of unpaid legal fees incurred by Bass over a period of time. Anthony Barash and Jerry Hill, members of the law firm of Cox, Castle & Nicholson, later left that firm to form their own law firm known as Barash & Hill, and Cox, Castle & Nicholson then assigned its interest in the pledged assets to Barash & Hill. Thus, the pledge agreement between Bass and his attorneys will hereinafter be referred to as the Barash & Hill pledge agreement;

(2) Bass executed a pledge agreement with William Kurtz, who was Bass's close business associate and an employee of AIP, Bass's wholly-owned corporation. The pledge agreement with Kurtz was allegedly made as security for Kurtz's equity interest in certain properties developed by AIP; and

(3) Bass likewise pledged other assets to Norman Lausch, another AIP employee, purportedly to guarantee payments owed

Lausch under his AIP employment contract.[2]

The trial proceeded and on May 2, 1980 the jury returned a verdict against Naredel of Texas, Inc. for over one million dollars. The jury's verdict absolved Bass of any liability on the guaranty. However, the trial court did grant American Fletcher's motion for judgment notwithstanding the verdict and held Bass jointly and severally liable on the debt.[3]

At this time, the difficult and arduous task of satisfying American Fletcher's judgment against Bass began. As part of these efforts, the district court held several supplemental hearings, and at a hearing in May of 1981, American Fletcher first became aware of Bass's three pledge agreements entered into during the trial without the court's knowledge or consent. On November 6, 1981, the district court issued an order finding the pledge agreements to be

"presumptively fraudulent conveyances as to the plaintiff American Fletcher Mortgage Company, Inc. and are hereby declared void and invalid as to American Fletcher Mortgage Company, Inc., subject to the right of the defendants to petition this Court, within thirty (30) days hereof, requesting a full evidentiary hearing in order to present evidence rebutting the finding that said conveyances were fraudulent as to the plaintiff, American Fletcher Mortgage Company, Inc."

The order also provided that:

"AND FURTHER, that said above described property covered by said presumptively fraudulent pledge agreements be delivered by the defendant Bass to the Clerk of the United States District Court for the Southern District of Indiana within ten days [of November 6, 1981]."

1. Naredel of Texas, Inc. is not a party to this appeal.

2. Norman Lausch left his job with AIP in October of 1980. At that time, Lausch assigned to Barash & Hill his interest in the property pledged to him on April 25, 1980. Consequently, the only pledge agreements pertinent to this

appeal involve property pledged to Kurtz and Barash & Hill.

3. The trial court's decision was affirmed by this court in an unpublished order, *American Fletcher Mortgage Co., Inc. v. Naredel of Texas, Inc., et al.*, 633 F.2d 1076 (7th Cir. 1981).

Bass subsequently made several half-hearted, unsuccessful attempts to comply with the court's order. In a letter to Barash & Hill dated November 12, 1981, Bass demanded that Barash & Hill return the pledged property in order that he might comply with the court order of November 6. Barash & Hill advised Bass, in a letter dated November 13, 1981, of their refusal to return the collateral.[4] It is interesting to note that Catherine Steel, an attorney with Barash & Hill, drafted both Bass's letter of demand and Barash & Hill's letter of refusal to return the collateral.

Bass also sent a letter to Kurtz demanding that Kurtz turn over the assets pledged to him. Kurtz refused this demand, and Bass made no other demand of Kurtz to return the assets. Shortly thereafter in January of 1982, Kurtz transferred these same assets to a new pledgeholder in Los Angeles with Bass's written consent, even though Bass, under the terms of the pledge agreement, could have blocked the transfer.

Since Bass failed to comply with the order of November 6, 1981, the district court on December 18, 1981 issued an order of execution and commanded the United States Marshal to execute upon and take possession of Bass's property held by Kurtz and Barash & Hill under the pledge agreements. The Marshal was unable to execute the order as all the pledged assets were at this time outside the jurisdiction of the court.

On January 24, 1982, Bass, acting as sole director and sole shareholder of AIP, caused the corporation to issue 3,200 new shares of AIP stock to a new shareholder, with AIP retaining the right to repurchase the newly issued shares. This transferred voting control of AIP from Bass to the new shareholder; consequently, even if American Fletcher had succeeded in recovering the 800 shares of pledged AIP stock, voting control of the corporation would have remained with the new shareholder.

On January 27, 1982, the court commenced a hearing to determine the legality of the pledge agreements. On January 28, American Fletcher's attorney orally moved the court to find Bass in civil contempt for his failure to comply with the November 6, 1981 order of the court requiring him to turn over the pledged assets to the clerk of court. A hearing on that motion was scheduled for the following day, January 29, 1982, at 11:00 a. m. Neither Bass nor his attorney objected nor did they request that the hearing be postponed or request more time to prepare for the hearing. After hearing arguments from the respective counsel and further testimony from Bass, the district court found Bass in civil contempt of court. In so holding, the court made the following pertinent findings of fact:

9. The only attempt made by Bass to comply with this order [of November 6, 1981], except for the alleged oral conversations with his associates and the tender of the shares of Bass Financial Corporation stock which Bass testified to be worthless, was the sending of two letters to the pledgees and pledgeholders asking them to turn over the property covered by the pledge agreements which the court had determined to be presumptively fraudulent.

10. These letters were merely an attempt at paper compliance with the Court's order.

11. Bass's reliance upon his inability to obtain the aid of the pledgees and pledgeholders as an excuse of failing to comply with this Court's order of November 6, 1981 is insufficient to show that he was unable to comply. The pledgees and pledgeholders were described as close associates of Bass; with Attorney Jerry M. Hill describing himself as a close personal friend of Bass and Bass describing attorney William G. Kurtz, Jr. as a

---

**4.** Attorney Hill later admitted, though, that Bass was entitled under the pledge agreement to possession of the collateral.

valued business associate and employee of the corporation in which Bass owned 100 percent of the corporate stock, and attorney Jerry M. Hill describing his law partner Anthony H. Barash as the business attorney for Bass and the Bass entities and one of the responsible attorneys within the law firm for the Bass account.

12. Bass did not make good faith efforts to obtain the property for delivery to the clerk of court.

13. Bass was not in default under any of the pledge agreements.

14. Bass was entitled to act with respect to the collateral in all matters and events and to exercise all rights and privileges incident to ownership of the collateral.

15. Bass was not required under the pledge agreements to ask permission from the pledgees or pledgeholders to remove the property to the Clerk's office. . . .

### Issues

Issue 1: Did the district court err in holding the appellant in civil contempt for failing to comply with a court order which the appellant argues was impossible to comply with?

Issue 2: Did the district court violate the appellant's constitutional right of due process of law by holding a contempt hearing one day after the appellee's oral motion for a finding of contempt?

### 1. *Compliance.*

■ When the district court held Bass in civil contempt, the court found that Bass failed to make a good faith effort to comply with the order of the court to turn over pledged assets and that his efforts amount-

ed to mere "paper compliance".[5] Because these findings are amply supported by the record, we affirm.

■ Bass was required, at the very least, to make a good faith effort to comply with the district court's order. *United States v. Greyhound*, 508 F.2d 529, 532 (7th Cir. 1974). The district court may find a defendant in civil contempt if he has not been "reasonably diligent and energetic in attempting to accomplish what was ordered." *Powell v. Ward*, 643 F.2d 924, 931 (2nd Cir. 1981).

Bass's only effort to obtain the property pledged to Barash & Hill consisted of one letter to Barash & Hill. The demand letter, however, was drafted by the same Barash & Hill attorney who wrote the firm's refusal to turn over the property. It strains credibility beyond its limit to argue that Bass's lawyer, who admitted Bass's right to possession, would retain possession of the collateral, thereby causing Bass to violate a court order and at the same time subjecting the lawyer to possible professional discipline, if Bass had not at the least acquiesced in the retention. Instead, it is clear that Bass's demand and Barash & Hill's refusal were no more than feeble and half-hearted attempts at mere "paper compliance" with the district court's order to turn over the pledged assets to the clerk of court.

Bass's sole effort to obtain the collateral pledged to Kurtz was a single letter to Kurtz. Kurtz purportedly refused this demand, even though the request was made by Bass, Kurtz's boss at AIP. Bass further permitted Kurtz to transfer the pledged collateral to a new pledgeholder in California, even though Bass had the right under the terms of the pledge agreement to prevent such a transfer. This consent was given in direct defiance of the November 6, 1981 court order.[6] We agree that the dis-

---

5. In reviewing the district court's findings we are bound by the "clearly erroneous" standard of Fed.R.Civ.P. 52(a), however it is appropriate to apply a critical view of the challenged findings, within the limits of 52(a), where, as here, the findings are prepared for the district court by the prevailing party. *Flowers v. Crouch-*

*Walker Corp.*, 552 F.2d 1277, 1284 (7th Cir. 1977).

6. Bass had AIP issue 3,200 new shares of AIP stock merely days before the January 1982 hearing, thereby diluting the value of the 800 shares ordered to be delivered to the court. This is further evidence demonstrating Bass's

trict court's findings of bad faith and "paper compliance" are fully supported by the record and are not clearly erroneous.

Bass further argues he should not be held in contempt as compliance with the November 6, 1981 order was impossible. He specifically attacks Finding No. 15 of the district court:

> "Bass was not required under the pledge agreements to ask permission from the pledgees or pledgeholders to remove the property to the Clerk's office."

To support his argument, Bass points to the provision of the pledge agreements which reads:

> "*No Transfer.* Pledgor shall not sell, pledge, hypothecate, transfer or convey the Collateral or any portion thereof without the written consent of the Pledgee, which consent shall not be unreasonably withheld."

Bass argues that the "No Transfer" provision of the pledge agreement made it impossible for him to transfer the previously pledged property to the clerk of court. We find this argument unpersuasive for three reasons. First, the "No Transfer" provision of the pledge agreements placed a limitation only on Bass's ability to encumber or change title to the pledged property as all of the actions restricted by the "No Transfer" provision (i.e., sell, pledge, hypothecate, transfer or convey) relate to interests in title.[7] The court order only required Bass to "deliver" the assets to the clerk of court and clearly did not require Bass to pass title of the pledged assets to the clerk of court. Second, the "No Transfer" clause must not be read in isolation, but rather must be read in the context of the entire pledge agreement, including the provision which recites:

> "6. *Rights Prior to Default.* Until there has been an Event of Default, Pledgor shall be entitled to act with respect to the Collateral in all matters and events and to exercise all rights and privileges incident to ownership of the Collateral."

Bass did not transfer ownership of the assets pledged as collateral; the pledgees could exercise ownership rights over the collateral only if Bass defaulted. Since there had been no default under the pledge agreements, it was well within Bass's power to deliver the assets to the clerk of court as a right incident to ownership. Third, and more importantly, Bass's argument of inability to comply is not persuasive, as in our review of the record we hold that Bass did not make a good faith effort to comply with the order. An argument of inability to comply will succeed only if the defendant can prove he has first made a good faith effort to comply with such order.[8] If Bass had been serious in his efforts to comply with the order requiring him to turn over the assets to the clerk of court, he could have petitioned the court for directions on how to comply with the order.

The record, reviewed as a whole, amply supports the district court's finding that Bass failed to make a good faith effort to comply with the district court's order and that Bass's conduct amounted to mere "paper compliance." We hold the district court's finding of contempt to be amply supported by the record and not clearly erroneous.

---

defiance and contempt for the district court's order.

**7.** Of the actions restricted by the "No Transfer" provision of the pledge agreements, only "transfer or convey" could conceivably be within the scope of "delivery" as required by the court order. However, the pledge agreements provided they were to be interpreted in accordance with California law, which provides:

> "[w]here a document is prepared by one skilled in the law, the word 'transfer' may be synonymous with the word 'convey' and con-

notes the passing of title by legal instrument."

*Commercial Discount Co. v. Cowen*, 18 Cal.2d 610, 116 P.2d 599, 602 (1941).

**8.** 17 Am.Jur.2d *Contempt* § 51 (1964) recites:

> "It has been held that [the defense of inability to comply with a court order] is effective only where, after using due diligence, the person is still not able to comply with the order."

*See United States v. Joyce*, 498 F.2d 592 (7th Cir. 1974).

## 2. Due Process.

Bass contends that his constitutional right of due process of law was violated by the manner in which the contempt hearing was held. More specifically, he argues that he was denied: (1) proper notice; (2) adequate time to prepare; and (3) a full evidentiary hearing. We disagree.

### Notice

In a civil contempt case, due process requires that notice be given of the time and place of hearing. "Oral notice to the party in court is sufficient. The purpose of the notice is to inform the contemnor of the nature of the charges and enable the contemnor to prepare a defense." *United States v. Powers*, 629 F.2d 619, 625 (9th Cir. 1980) (citations omitted).

The record, a portion of which is set out below,[9] demonstrates that Bass received proper notice of the time and place of the hearing and the charges against him in open court.

### Time

Bass argues that the notice of the contempt hearing given him on January 28 did not allow him a reasonable time to prepare for the contempt hearing the following morning, though neither Bass nor his retained counsel at any time requested the district court to grant more time to prepare for the hearing.

Scheduling of the hearing was a matter within the discretion of the trial court:

"Determining the time reasonably required to prepare a defense to the charge [of contempt] involved an exercise of the trial court's informed discretion. The trial judge's ruling is to be reversed only for abuse of discretion. *See Nilva v. United States*, 352 U.S. 385, 395, 77 S.Ct. 431 [437], 1 L.Ed.2d 415 (1965)."

*United States v. Robinson*, 449 F.2d 925, 931 (9th Cir. 1971).

Furthermore, in determining whether Bass had sufficient time to prepare for the contempt hearing, we note:

"Short periods of time have been held sufficient to allow for preparation. *E.g., In re Allis* [531 F.2d 1391 (9th Cir.)] [ten minutes preparation time adequate to prepare for contempt hearing]; *United States v. Hawkins* [501 F.2d 1029 (9th Cir.)] [one day sufficient to prepare for contempt hearing]. Obviously a 'reasonable' time will vary according to the circumstances of the case."

---

**9.** In open court on January 28, 1982, the plaintiff's attorney moved for a finding of contempt:

"Your Honor, I respectfully move this Court that under the facts and circumstances and the testimony which has been elicited from the witnesses in this case, that an Order issue from this Court holding Mr. Bass in contempt of this Court's previous orders respecting the tender of certain assets to the Clerk of the Court. . . .

The testimony that was elicited shows that this Court issued an Order that required Mr. Bass to tender to the Court a variety of assets. From Mr. Bass's own cross-examination, it now becomes clear that Mr. Bass, rather than spending such efforts as he could to cause the stock of American Income Properties to be tendered into the Clerk of this Court, made a demand on Mr. Kurtz, Mr. Kurtz said no, and then Mr. Bass apparently consented to that stock going not into the custody of the Clerk of this Court, but consented to that stock going out of the possession of Mr. Kurtz, not into the possession, again, of the original pledge holder, but into the possession of a new third party.

Additionally, Mr. Bass as the sole shareholder, and Mr. Bass as the sole director of American Income Properties, knowingly, willfully, caused substantial changes in the amount of stock issued and outstanding to American Income Properties, greatly diluted the value of the existing stock, effectively transferred control of the stock to a third party beyond the reach of this Court.

There is also the testimony of Mrs. Steel with respect to the alleged conflict that exists between Mr. Bass and the firm Barash & Hill, a supposedly arm's length transaction in which Mrs. Steel was drafting demand letters and letters of discharge for Mr. Bass against the firm for whom she worked.

All of the testimony that has been elicited, Your Honor, shows a deliberate and systematic pattern by the defendant, Dennis Bass, to avoid and frustrate the obvious import of the Order of this Court. It shows a deliberate attempt by Mr. Bass to frustrate not only the Plaintiff, but the Order of the Court in marshalling these assets pursuant to the proceeding supplemental, and the testimony that has come forward, I believe, shows conclusively that that is what has happened."

*United States v. Powers,* 629 F.2d 619, 625 (9th Cir. 1980) (citations omitted).

Guided by these principles, we hold that the trial court did not abuse its discretion when it held the contempt hearing on January 29, 1982. Bass had, over the preceding eight months, presented all of his evidence relating to the pledge agreements and his efforts to comply with the November 6, 1981 order. Where all of the evidence in support of Bass's defense to the contempt charge had been presented to the court, there was no need for a longer period of time in which to prepare for the contempt hearing. Therefore, we reject Bass's second due process claim.

*Evidentiary Hearing*

Bass argues that, if he had had more time prior to the hearing, "he could have called the parties to the pledge agreements—Tony Barash, William Kurtz and Norman Lausch—to provide whatever insight they might have to offer in his defense." Bass failed to ask the district court for a continuance nor did he inform the court that he wanted to call any additional witnesses at the hearing. Instead, Bass raises for the first time in this appeal his three due process claims, including the issue of the need for additional witnesses. This court has held "that an issue not presented in the court below cannot be raised for the first time on appeal and form a basis for reversal." *Country Fairways, Inc. v. Mottaz,* 539 F.2d 637, 642 (7th Cir. 1976).

*Conclusion*

The record shows that Bass acted in direct defiance of the district court's order in failing to deliver the pledged assets to the clerk of court. Accordingly, we hold that: (1) the district court's finding of civil contempt was not clearly erroneous as that finding was amply supported by the record; and (2) Bass's constitutional rights to due process of law were not violated as he received sufficient notice of the charges, allowing adequate time to prepare and present his defense. The order of the district court is AFFIRMED.