[No. B047352. Second Dist., Div. Five. Oct. 11, 1991.]

In re the Marriage of JOYCE TULLOS AND BERTRAM BERNARD KATZ.
JOYCE TULLOS KATZ, Appellant, v.
BERTRAM BERNARD KATZ, Respondent;
DIETMAR E. ROTHE, Claimant and Respondent.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part III (C).

**COUNSEL**

Paula Gavin and Hugh A. Lipton for Appellant.

No appearance for Respondent.

Irene Cockcroft for Claimant and Respondent.

**OPINION**

**TURNER, P. J.—**

## I. INTRODUCTION

This is an appeal from a judgment entered in the marital dissolution case of Joyce Tullos Katz v. Bertram Bernard Katz against Joyce Tullos Katz in favor of judgment creditor-lienor Dietmar E. Rothe (Rothe). The judgment was entered on a noticed motion for an order enforcing a judgment lien pursuant to Code of Civil Procedure sections 708.410-708.480.[1]

---

[1]All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

## II. Procedural and Factual Matters

For purposes of clarity, the wife and husband will be referred to by their first names. Joyce petitioned for legal separation on August 16, 1985. In a consolidated Los Angeles Superior Court action case No. C628209 filed on December 10, 1986, Joyce sought judicial determinations concerning property that had been acquired during the course of the couple's relationship before and after their marriage in 1976. Rothe obtained a judgment against Bertram in San Diego Superior Court case No. 501534 which was entered on July 31, 1987. On September 25, 1987, Rothe filed a notice of lien pursuant to section 708.410, subdivision (b) against Bertram in the marriage dissolution action between Joyce and Bertram. Copies of the lien notice were served on counsel for Joyce and Bertram. On August 30, 1987, pursuant to section 708.470,[2] Rothe moved in the marital dissolution action for an order that any judgment entered in the marital dissolution action in Bertram's behalf "be applied to the satisfaction of . . . Rothe's lien rights." On September 14, 1988, the trial court, pursuant to section 708.470, subdivisions (a) and (b), granted the motion and ruled that "any judgment due to [Bertram] in this dissolution of marriage matter shall be applied to the satisfaction of the lien of judgment creditor . . . Rothe."

In a declaration filed in the dissolution action, which was in the superior court file, Bertram claimed that all property acquired prior to the marriage was his separate property. He also claimed a community interest in a single family residence under construction and a single family residence held in the name of Joyce and her daughter from a previous marriage which Joyce claimed as her separate property. Joyce claimed in her "Community & Quasi-Community Property Declaration" which was dated August 16, 1985, that the community had assets in excess of $17 million.

---

[2]Section 708.470 provides, "(a) If the judgment debtor is entitled to money or property under the judgment in the action or special proceeding and a lien created under this article exists, upon application of any party to the action or special proceeding, the court may order that the judgment debtor's rights to money or property under the judgment be applied to the satisfaction of the lien created under this article as ordered by the court. Application for an order under this section shall be on noticed motion. The notice of motion shall be served on all other parties. Service shall be made personally or by mail. [¶] (b) If the judgment determines that the judgment debtor has an interest in property, the court may order the party having custody or control of the property not to transfer the property until it can be levied upon or otherwise applied to the satisfaction of the lien created under this article. [¶] (c) If the court determines that a party (other than the judgment debtor) having notice of the lien created under this article has transferred property that was subject to the lien or has paid an amount to the judgment debtor that was subject to the lien, the court shall render judgment against the party in an amount equal to the lesser of the following: [¶] (1) The value of the judgment debtor's interest in the property or the amount paid the judgment debtor. [¶] (2) The amount of the judgment creditor's lien created under this article."

On March 15, 1989, Joyce and Bertram filed a "Further Judgment on Reserved Issues Pursuant to Stipulation" (Further Judgment) in the dissolution action. The Further Judgment provided for settlement of disputes including property, support, and custody of minor children.[3] It provided in part that

[3]The Further Judgment provided in relevant part: "THE COURT MAKES THE FOLLOWING ORDERS ON RESERVED ISSUES: [¶] 1. PROPERTY AWARDED TO PETITIONER: Petitioner JOYCE TULLOS KATZ is hereby awarded as her sole and separate property, and shall hold the respondent harmless therefrom, the following assets: [¶] A. All jewelry, clothing and personal effects in her possession. [¶] B. Household furniture, furnishings, appliances and objects of art in her possession. [¶] C. All bank accounts in existence in her name or upon which she has the right to withdraw funds. [¶] D. Any and all interests in that certain IRA account which was in existence at the time of separation standing in her name. [¶] E. Any and all interest in Largent Company. [¶] F. Any and all interest in that certain real property standing in her name together with her daughter, Pamela Burlingame, located at 27186 Via Amistosa, Agoura, CA 91031[ ] [¶] G. That certain 1984 Vanagon automobile [ ] [¶] H. That certain 1985 Chrysler Fifth Avenue automobile [ ] or any subsequently purchased automobile in her possession. [¶] I. An equalizing cash payment of $1,550,000.00 is due to the petitioner from the respondent which shall be paid by shares of Intelligent Electronics stock held by KB Equities, Inc. and/or the funds on deposit in the following accounts." The Further Judgment then listed a series of investment accounts and bonds which totalled $926,489. The judgment continued: "The balance owing to petitioner from respondent in the amount of $623,511.00 dollars shall be paid by the respondent within 15 business days, and said sum shall be secured by the shares of Intelligent Electronics stock presently on deposit at Bateman Eichler Hill Richards, all of which shall remain thereat under an order restraining distribution, sale or transfer absent written agreement between the petitioner and respondent or court order in these proceedings. In the event that the respondent fails to pay the balance owing in cash within said 15 days, said balance owing to petitioner shall be paid by distributing to her 37,788 shares of Intelligent Electronics stock based on the following calculation . . . ."

The Further Judgment then proceeded to describe the property awarded to respondent. The Further Judgment stated: "2. PROPERTY AWARDED TO RESPONDENT: Respondent [ ] is hereby awarded as his sole and separate property, and shall hold petitioner harmless therefrom, the following assets: [¶] A. That certain real property in Tucson, Arizona, known as Toltec, legally described as: [¶] Lot 32, Block F, Toltec/Arizona Valley Unit Six, according to the plat of record in the Office of the Pinal County Recorder in Book 12 of Maps, page 17. [¶] B. That certain commercial real property located at 6849 Hayvenhurst, Van Nuys, California [ ] including without limitation the rental income and leases relating thereto. [¶] C. Any and all interest in that certain second trust deed and/or the principal sum of $60,000.00 due thereon from SUSAN BARNES KATZ. [¶] D. All jewelry, coin collections, antiques, art, household furniture and furnishings, personal effects and clothing in his possession. [¶] E. That certain 1985 Cadillac Biarritz automobile [ ], or any subsequently acquired automobile in his possession. [¶] F. All cash on hand, including funds on deposit in the following accounts: (1) Bank of America, Van Nuys Main Branch, 6551 Van Nuys Boulevard, Van Nuys, California 91401 [ ], respondent's personal checking account, and his IRA account. [¶] (2) Any and all other bank accounts in existence in his name or upon which he has the right to withdraw funds, excluding those accounts hereinabove awarded to petitioner. [¶] (3) The balance of the funds on deposit at Janney Montgomery [ ], representing the proceeds of the sale of Intelligent Electronics stock after payment to Petitioner of $162,500.00 as set forth above." The Further Judgment then went on to list four additional stock brokerage accounts and substantial shares in various corporations, notes due from individuals and corporations, and interests in California and Nevada corporations and other business interests. Additionally,

Joyce would receive an equalizing cash payment of $1,550,000 from various stocks and accounts. On April 25, 1989, the parties filed a document entitled "Stipulation Re Termination of Restraining Order, For Distribution of Assets, and Order Thereon" (the Stipulation) which provided that Joyce would receive from Bertram an "equalizing cash payment of $599,673.90."[4] The Further Judgment referred to property Joyce declared under oath was community property in her aforementioned declaration dated September 25, 1985. Some of that property was conveyed to Bertram to be his separate property. There was no evidence that Rothe's counsel was served with copies of the Further Judgment or the Stipulation prior to their filing.

On October 4, 1989, Rothe filed a motion for an order enforcing his judgment lien pursuant to sections 708.410-708.480 against Joyce. As noted previously, Rothe had secured a judgment lien in compliance with section 708.410, subdivisions (a) and (b), against Bertram on September 14, 1988. Joyce opposed the motion for imposition of Rothe's judgment against her on the ground that she had not transferred any property to Bertram in the settlement of the dissolution action which had been subject to the judgment lien against Bertram entered on September 14, 1988.

---

the Further Judgment awarded to Bertram "[a]ny and all interest in any recovery or settlement from or relating to the following lawsuits: Katz v. Bank of America and Community Savings; Katz v. The Small Business Administration; and Katz v. Michael Stratman [ ]." (Italics omitted.) Finally, the Further Judgment provided in connection with liabilities that Bertram was to hold Joyce "free and harmless from any judgment or liability found to exist as a result of the following lawsuits . . . Rothe v. Katz, San Diego Superior Court case No. 501534." (Italics omitted.)

[4] The stipulation filed April 25, 1991, provided in its entirety: "IT IS HEREBY STIPULATED by and between Petitioner JOYCE TULLOS KATZ and Respondent BERTRAM BERNARD KATZ, in order to effectuate the Further Judgment on Reserved Issues Pursuant to Stipulation filed on March 15, 1989, as follows: [¶] 1. Pursuant to paragraph 1. I(4) of said Further Judgment, petitioner shall receive from respondent an equalizing cash payment of $599,673.90. In order to pay said funds to petitioner, the parties intend to release, and to terminate the restraining order issued relating thereto, the Intelligent Electronics stock presently held at Bateman Eichler Hill Richards in the name of KB Equities, Inc. and/or Bernard Katz for purposes of delivery of said stock to United Valley Bank in Philadelphia, Pennsylvania. [¶] 2. Bateman Eichler Hill Richards is relieved of the Stipulation Re Injunctive Order Concerning Transfer of Stock and Order Thereon entered into by the parties on March 15, 1989, and, upon receipt by it of a wire transfer of cash funds in a sum no less that $599,673.90, Bateman Eichler Hill Richards is authorized by this Order to release to United Valley Bank 63,572 shares of Intelligent Electronics stock (INEL) Account No. LS55-4209-1204. [¶] 3. Immediately upon receipt of the wire transfer of funds from United Valley Bank in a sum no less than $599,673.90 to Bateman Eichler Hill Richards, and the concurrent transfer of stock to United Valley Bank as herein above provided, Bateman Eichler Hill Richards shall deliver its check to petitioner JOYCE TULLOS KATZ in such sum, and no less, received from United Valley Bank. [¶] 4. This may be heard by a commissioner sitting as a temporary judge." Attached to the stipulation was an order signed by Judge Richard E. Denner of the Los Angeles Superior Court.

At the hearing on the motion on October 25, 1989, the court denied a request for continuance by "specially appearing" counsel on behalf of Bertram. Prior to argument, Joyce's counsel orally requested a jury trial, an evidentiary hearing, and a statement of decision. The trial court denied the requests for jury trial and an evidentiary hearing. The court then granted the motion pursuant to section 708.470, subdivision (c). With respect to the request for statement of decision, the court stated that it would only give an oral statement of decision. The court found that "the facts from the file—the declaration indicates that a substantial transfer of assets far in excess of the amount of the judgment sought here, there's been over a million dollars transferred, that this is an appropriate case." On November 9, 1989, 15 days after the hearing, Joyce filed written objections to the sufficiency of the oral statement of decision claiming that she could not determine on what basis: the court found a transfer from Joyce to Bertram; Joyce had any interest in any of the property received by Bertram; and the value of Joyce's interest in property received by Bertram. Joyce also objected because the oral statement of decision failed to explain why the court in ruling on the judgment lien motion concluded that the settlement of the marital dissolution action was not court supervised. The court entered judgment in favor of Rothe and against Joyce on November 29, 1989, in the sum of $123,807.87. Joyce filed a timely notice of appeal.

## III. Discussion

### A. *Joyce has waived any objection to the statement of decision*

 Joyce claims that the trial court committed reversible error in relying on its oral decision as the statement of decision. Joyce is not entitled to a reversal on this issue pursuant to the express provisions of section 632.[5] Under this section, the trial court was entitled to give an oral statement of decision since the hearing was concluded within one calendar day. Joyce

---

[5]Section 632 provides in part: "[U]pon the trial of a question of fact by the court, written findings of fact and conclusions of law shall not be required. The court shall issue a statement of decision explaining the factual and legal basis for its decision as to each of the principal controverted issues at trial upon the request of any party appearing at the trial. The request must be made within 10 days after the court announces a tentative decision unless the trial is concluded within one calendar day or in less than eight hours over more than one day in which event the request must be made prior to the submission of the matter for decision. The request for a statement of decision shall specify those controverted issues as to which the party is requesting a statement of decision. After a party has requested such a statement, any party may make proposals as to the content of the statement of decision. [¶] The statement of decision shall be in writing, unless the parties appearing at trial agree otherwise; however, when the trial is concluded within one calendar day or in less than 8 hours over more than one day, the statement of decision may be made orally on the record in the presence of the parties."

claims, however, that the oral statement was insufficient since it failed to address the specific controverted issues in this case. There are two problems with Joyce's argument. The first is that Joyce, through her counsel, did not comply with section 632 since she did not "specify those controverted issues as to which [she was] requesting a statement of decision" until 15 days after the hearing on the motion and after the trial court announced its statement of decision. Section 632 provides, "The request must be made within 10 days after the court announces a tentative decision unless the trial is concluded within one calendar day or in less than eight hours over more than one day in which event the request must be made prior to the submission of the matter for decision." It is only error when the trial court refuses to explain the factual and legal basis for a decision as to the principal controverted issues when there is a *timely* request. (*Laws* v. *County of San Diego* (1990) 219 Cal.App.3d 189, 197 [267 Cal.Rptr. 921].) Therefore, although Joyce, through her attorney, requested a statement of decision which discussed certain issues, she did not timely comply with section 632 and she cannot claim that the statement was insufficient.

## B. *There was a transfer of property*

This case involves the effort by a judgment creditor to recover the amount due to him under an existing judgment by means of a judgment lien in an action in which the judgment debtor was a party. Prior to 1941, a judgment creditor could not secure a judgment lien in a lawsuit where the judgment debtor potentially could recover a judgment. Rather, a judgment creditor would "levy execution upon and sell a pending cause of action in which [the] judgment debtor was [a] plaintiff." (*Roseburg Loggers, Inc.* v. *U.S. Plywood-Champion Papers, Inc.* (1975) 14 Cal.3d 742, 746 [122 Cal.Rptr. 567, 537 P.2d 399].) The problem with the pre-1941 procedure was that "a cause of action upon which an action [was] pending [did] not bring very much on execution sale . . . ." (*The Work of the California 1941 Legislature* (1941) 15 U.So.Cal.L. Rev. 1, 18.) In 1941, former Code of Civil Procedure section 688.1, which provided for a judgment lien against a judgment debtor, was enacted (Stats. 1941, ch. 1148, § 2, pp. 2856-2857) and was later amended on several occasions. (Stats. 1943, ch. 94, § 1, p. 799; Stats. 1951, ch. 1737, § 105, pp. 4121-4122; Stats. 1968, ch. 1036, § 1, pp. 2001-2002; Stats. 1970, ch. 1245, § 1, pp. 2235-2236; Stats. 1970, ch. 1523,§ 7.5, pp. 3069-3070.)[6]

---

[6]Section 688.1, subdivision (a) which was in effect immediately prior to the recodification of law relating to enforcement of judgments in 1982 provided: "Except as provided for in subdivision (b), upon motion of a judgment creditor of any party in an action or special proceeding made in the court in which the action or proceeding is pending upon written notice to all parties, the court or judge thereof may, in his discretion, order that the judgment creditor be granted a lien upon the cause of action, and upon any judgment subsequently procured in

Prior to 1982, former section 688.1 in all of its versions was described as "remedial in nature and should be liberally construed to give effect to the remedy which it authorizes." (*McClearen* v. *Superior Court* (1955) 45 Cal.2d 852, 856 [291 P.2d 449].) Among the purposes of former section 688.1 were the elimination of the dangers of a judgment creditor receiving less than the full value of the judgment debtor's recovery and to "protect the judgment creditor against the debtor entering into a collusive agreement with his [or her] debtor to deprive the judgment creditor of resort to the cause of action or judgment of the judgment debtor." (*Takehara* v. *H.C. Muddox Co.* (1972) 8 Cal.3d 168, 172 [104 Cal.Rptr. 345, 501 P.2d 913].)

In 1982, the Legislature enacted the Enforcement of Judgments Law. (Stats. 1982, ch. 1364, §§ 1-7, pp. 5070-5237.) This massive recodification and modification of statutes relating to postjudgment enforcement proceedings was in response to an October 1980 recommendation of the California Law Revision Commission. (Tent. Recommendation Proposing the Enforcement of Judgments Law (Oct. 1980) 15 Cal. Law. Revision Com. Rep. (1980) pp. 2001-2686; Assem. Com. on Judiciary, Rep. on Assem. Bill No. 707 (1982 Reg. Sess.) p. 1.) Section 688.1 was recodified as sections 708.410-708.480.[7] The provisions of sections 708.410-708.480, which replaced former section 688.1, set forth the procedure to be followed by a judgment creditor in securing a lien on a cause of action or other claim. A judgment creditor files and serves a copy of a notice of lien on all of the parties to the "action or special proceeding . . . ."[8] (§ 708.410, subd. (a).) After the notice of lien is served, the judgment creditor may secure an order by way of a motion that applies money or property that the judgment debtor

---

such action or proceeding, and, during the pendency of such action, may permit such judgment creditor to intervene therein. Such judgment creditor shall have a lien to the extent of his judgment upon all moneys recovered by his judgment debtor in such action or proceeding and no compromise, settlement or satisfaction shall be entered into by or on behalf of such debtor without the consent of such judgment creditor unless his lien is sooner satisfied or discharged. The clerk or judge of the court shall endorse upon the judgment recovered in such action or proceeding a statement of the existence of the lien, the date of the entry of the order creating the lien, and the place where entered, and any abstract issued upon the judgment shall contain, in addition to the matters set forth in Section 674[ ], a statement of the lien in favor of such judgment creditor." None of the various versions of section 688.1 that exist between 1941 and 1982 varied in any fashion which is material to the issues raised in this case. (Stats. 1970, ch. 1523, § 7.5, pp. 3069-3070.)

[7]Other provisions of the 1982 enactment also related to a lien on a pending action. Section 695.030, subdivision (b) prevented a cause of action from being subject to enforcement other than by means of a judgment lien and section 699.720, subdivisions (3) and (4) prevented a cause of action in the case of a nonfinal judgment from being executed but upon by means of a levy or sale.

[8]At present, Judicial Council form EJ-185 is a form which complies with the requirements of section 708.420 which relates to the contents of a judgment lien notice.

is entitled to in the "action or special proceeding" to the satisfaction of the judgment creditor's judgment. (§ 708.470, subds. (a) & (b); 2 Debt Collection Practice in Cal. (Cont.Ed.Bar 1987) § 8.48, p. 616; 8 Witkin, Cal. Procedure (3d ed. 1985) Enforcement of Judgment, § 297, p. 257.) In the case at bar, Rothe secured such an order on September 14, 1988, which directed that "any judgment due to [Bertram] in this dissolution of marriage matter shall be applied to the satisfaction of the lien of judgment creditor . . . Rothe." The September 14, 1988, order was issued pursuant to section 708.470, subdivisions (a) and (b).

After the filing of the Further Judgment on March 15, 1989, and the Stipulation on April 25, 1989, pursuant to section 708.470, subdivision (c), Rothe sought to assert his rights against Joyce as a transferor of property subject to his judgment lien on any property or money to be transferred to Rothe in the action.

As noted previously, section 708.470, subdivision (c) provides: "If the court determines that a party (other than the judgment debtor) having notice of the lien created under this article has transferred property that was subject to the lien or has paid an amount to the judgment debtor that was subject to the lien, the court shall render judgment against the party in an amount equal to the lesser of the following: [¶] (1) The value of the judgment debtor's interest in the property or the amount paid to the judgment debtor. [¶] (2) The amount of the judgment creditor's lien created under this article." ■ Section 708.470, subdivision (c) thereby allows a judgment creditor such as Rothe to obtain a judgment against a person such as Joyce who has transferred assets subject to a lien created pursuant to section 708.410 to a judgment debtor such as Bertram. (16 Cal.Jur.3d, pt. 2, Creditors' Rights and Remedies, § 234, pp. 317-318.) The same considerations of liberal construction and legislative purposes that applied to former section 688.1 in its various versions control judicial resolution of motions brought pursuant to section 708.470, subdivision (c). (*In re Marriage of Kerr* (1986) 185 Cal.App.3d 130, 134 [229 Cal.Rptr. 610].) Section 708.470 may be applied to family law proceedings. (*Ibid.*; 4 Markey, Cal. Family Law (1991) § 50.45, pp. 50-140.16-50.140.17; 2 Cal. Marital Dissolution Practice (Cont.Ed.Bar 1983) § 23.91, p. 960; 2 Cal. Marital Dissolution Practice (Cont.Ed.Bar 1991 Supp.) § 23.91, 214.)

■ Joyce contends that the judgment must be reversed because there was no evidence that the division of the property pursuant to the Further Judgment and the Stipulation amounted to a *transfer* of property within the meaning of section 708.470, subdivision (c). Transfer of property is not

defined in section 708.470. ■ However, Civil Code section 1039 defines a transfer as "an act of the parties, or of the law, by which the title to property is conveyed from one living person to another." The Supreme Court has noted: "In legal phraseology it is commonly used to denote the passing of title in property, usually realty, or an interest therein from one person to another. [Citations.] . . . [W]hile the word 'transfer' as used in the Civil Code indicates the passing of title from one person to another, in its ordinary use it has a very general meaning, including the removal of a thing from one place to another, the changing of its control or possession or conveyance of title to it." (*Commercial Discount Co.* v. *Cowen* (1941) 18 Cal.2d 610, 614 [116 P.2d 599].) ■ We conclude that substantial evidence supports the finding that Joyce transferred property to Bertram which was subject to the lien imposed on September 14, 1987.

There is substantial evidence that the monies and property transferred to Joyce under the Further Judgment filed March 15, 1989, and the Stipulation filed April 25, 1989, were to equalize property transferred to Bertram which were subject to Rothe's lien rights. Rothe's moving papers filed on October 4, 1989, in which he sought to impose a judgment lien on Joyce's share of the moneys and property given to her under the terms of the Further Judgment and the Stipulation were based upon the pleadings, records, and files in the present case. One of the documents in the superior court file was Joyce's "Community & Quasi-Community Property Declaration." In that under-oath submission, she identified millions of dollars of equity in real estate, furniture, securities, and other accounts and listed all of that as community property. For example, Joyce claimed a commercial building at 6849 Hayvenhurst in Van Nuys as community property and assigned it a net value of $1.2 million. This building was conveyed to Bertram pursuant to the Further Judgment filed March 15, 1989. The two *equalizing* payments totalling $2,149,673.90 paid pursuant to the Further Judgment and the Stipulation were to compensate Joyce for her share of the community property. The equalizing payments or the 6849 Hayvenhurst property both had values far in excess of the $123,807.87 judgment imposed against Joyce and in favor of Rothe.

Based upon this evidence, the trial court could reasonably conclude that Joyce, with full knowledge of Rothe's lien rights, transferred to Bertram more than one-half of the undivided community property interest held jointly by Bertram and herself and, in return, received over $2 million. This transfer of community property to Bertram as his separate property gives rise to a liability on her part pursuant to section 708.470, subdivision (c). The fair inference to draw from the fact that Joyce received over $2 million in equalizing payments was that the money was to "equalize" her portion of the

division of the community property assets. When she exercised her right of joint control over the community assets (Civ. Code, § 5125; *People v. Kahanic* (1987) 196 Cal.App.3d 461, 466 [241 Cal.Rptr. 722]; Hogoboom & King, Cal. Practice Family Law Guide (1991) § 8.145, p. 8-116) and conveyed a share to Bertram as his sole property pursuant to the Further Judgment and the Stipulation in return for in excess of $2 million, she incurred liability for that transfer pursuant to section 708.470, subdivision (c).[9] As previously noted, in *Commercial Discount Co. v. Cowen, supra,* 18 Cal.2d at page 614, the Supreme Court defined the term "transfer" as used in Civil Code section 1039 as an event where title passes from one person to another or there is a change in the right to control property. In the present case, title to jointly held community property became Bertram's separate property which was no longer subject to the joint control of Bertram and Joyce.

Joyce argues that all the properties and moneys awarded to Bertram were not community assets. To begin with, the sole evidence on this subject was Joyce's own attorney's conclusory declaration premised principally upon hearsay. The problem was that her attorney's conclusory declaration was contradicted by Joyce's own community property declaration which identified specific property having a value well in excess of $1 million which was later transferred to Bertram as well as the inferences to be drawn from the Further Judgment and the Stipulation. As an appellate court, we may not reweigh the conflicting evidence. (*Crawford v. Southern Pacific Co.* (1935) 3 Cal.2d 427, 429 [45 P.2d 183]; *Minelian v. Manzella* (1989) 215 Cal.App.3d 457, 463 [263 Cal.Rptr. 597].) In conclusion, there was substantial evidence of a transfer within the meaning of section 708.470, subdivision (c).

C. *The trial court did not abuse its discretion in denying the motions made on the date of the hearing**

. . . . . . . . . . . . . . . . . . . . . . . . . .

---

[9]There was no evidence presented which indicated that Joyce did not have a right of joint control over the community assets she listed under oath in her declaration or that she had granted Bertram sole control over the community property estate. (1 Markey, Cal. Family Law (1991) § 5.54, pp. 5-96.16-5.97.)

*See footnote, *ante,* page 1711.

## IV. Disposition

The judgment entered November 29, 1989, is affirmed. Judgment creditor Dietmar E. Rothe is to recover his costs on appeal from petitioner Joyce Tullos Katz.

Boren, J., and Grignon, J., concurred.