Jack W. SAVAGE, Petitioner,

v.

COMMODITY FUTURES TRADING COMMISSION, Respondent.

No. 76–1241.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 27, 1976.

Decided Jan. 17, 1977.

Joel J. Bellows, Charles B. Bernstein, Chicago, Ill., for petitioner.

Howard Schneider, Frederic T. Spindel, Washington, D. C., for respondent.

Before MOORE, Circuit Judge,* and PELL and SPRECHER, Circuit Judges.

MOORE, Circuit Judge.

The petitioner, Jack W. Savage ("Savage"), petitions this court to review a final order of the Commodity Futures Trading Commission (the "Commission"), entered on March 1, 1976, denying his application for registration as a commodity trading advisor. The Commission's order was entered after an appeal from the decision and order of the Administrative Law Judge ("ALJ") denying such application. The Commission's order denied the application on grounds somewhat different from those relied on by ALJ. A brief statement of the background facts is necessary to place the legal issues in proper perspective.

## I.

Savage has been associated with the securities business since 1963, before which time he had graduated from college and had attended law school for one year. From 1963 to 1966 he was an employee of the brokerage firm of Francis I. Dupont & Co. (New Orleans office). In 1966 he formed his own firm, Investors Trading Company ("ITC"), which he operated for one year.

Savage's business life with ITC was not uneventful. On two separate occasions, April 15, 1966, and July 19, 1967, he had been permanently enjoined by a federal court from further violations of the securities laws. These injunctions were issued on consent.[1] Later, on July 29, 1970, Savage

---

* Honorable Leonard P. Moore, United States Circuit Judge for the Second Circuit, sitting by designation.

1. Both actions were brought by the Securities and Exchange Commission. Unfortunately, the record does not present a complete factual picture of either of them. The 1966 injunction appears to have arisen out of Savage's written representation that ITC held Collegiate Baptist Church Bonds. The Bonds were in fact not held by ITC, were not even registered for trading, and were worthless. The injunction enjoined Savage from violating the registration provisions of the Securities Act of 1933, 15 U.S.C. § 77a et seq. (1970), and section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) (1970).

The 1967 injunction enjoined Savage from engaging in the business of being an interstate securities broker-dealer without registration, in

was convicted after a jury trial of securities and mail fraud arising out of the operations of his ITC firm.[2]  A three year prison sentence was suspended on condition that he endeavor to repay his customers in full.  In May 1974 probation was terminated, Savage having made full restitution and paid a $16,000 fine.

Since 1971 Savage has been self-employed as a commodity trader and advisor.  In this connection he published a weekly subscription newsletter, *The Commodity Exchange Bulletin*, giving his views on the commodity market.  He has also advised clients through seminars, lectures, letters and personal contacts.

In 1974 Congress enacted the Commodity Futures Trading Commission Act ("Act"), Pub.L. No. 93–463, 88 Stat. 1389, which amended the Commodity Exchange Act, 7 U.S.C. §§ 1–17a (1970).  Pursuant to provisions of the Act, as a "commodity trading advisor," [3] Savage was required to register with the Commission.  7 U.S.C. § 6n (Supp. V 1975).[4]  On March 7, 1975, he made his application to be registered;  and on July 25, 1975, the Commission ordered a public hearing pursuant to Section 8a of the Act, 7 U.S.C. § 12a (Supp. V 1975), *amending* 7 U.S.C. § 12a (1970), which provides:

"The Commission is authorized—

(1) to register  . . .  commodity trading advisors  . . .  upon application in accordance with rules and regulations and in form and manner to be prescribed by the Commission;  and

(2) to refuse to register any person—

\*  \*  \*  \*  \*  \*

(B) if it is found, after opportunity for hearing, that the applicant is unfit to engage in the business for which the application for registration is made,

(i) because such applicant  . . . at any time engaged in any practice of the character prohibited by this chapter or was convicted of a felony in any State or Federal court, or  . . .

(ii) for other good cause shown  . . .."

violation of the Securities Exchange Act of 1934, 15 U.S.C. § 78a et seq. (1970).  It seems to have arisen out of a New Orleans purchase made in ITC's name by two Florida residents.  Savage claims not to have objected to this injunction because of the imminent financial collapse of ITC.  Both injunctions were issued on his consent, without his ever admitting or denying the allegations.

2.  The indictment charged that Savage had sold securities which had been hypothecated with ITC by its customers as margin;  had confirmed purchases and sales to customers although the orders had not been executed on an exchange;  and had sent purported dividend checks to customers for stocks which had been hypothecated as margin by customers, although the stocks had in fact been sold by ITC.  Savage was convicted on all counts.

3.  Section 2(a)(1) of the Act, 7 U.S.C. § 2 (Supp. V 1975), defines "commodity trading advisor" to mean

"any person who, for compensation or profit, engages in the business of advising others, either directly or through publications or writings, as to the value of commodities or as to the advisability of trading in any commodity for future delivery on or subject to the rules of any contract market, or who for compensation or profit, and as part of a regular business, issues or promulgates analyses or reports concerning commodities;  but does not include (i) any bank or trust company, (ii) any newspaper reporter, newspaper columnist, newspaper editor, lawyer, accountant, or teacher, (iii) any floor broker or futures commission merchant, (iv) the publisher of any bona fide newspaper, news magazine, or business or financial publication of general and regular circulation including their employees, (v) any contract market, and (vi) such other persons not within the intent of this definition as the Commission may specify by rule, regulation, or order:  *Provided*, That the furnishing of such services by the foregoing persons is solely incidental to the conduct of their business or profession."

Savage has not contended that he fits into any of the six exceptions to the definition.

4.  In section 4l of the Act, 7 U.S.C. § 6l (Supp. V 1975), Congress expressly found that "the activities of commodity trading advisors  . . . are affected with a national public interest . . . ."

The public hearing was authorized to ascertain the facts relating to charges by the Commission's staff that Savage was "unfit" to be a commodity trading advisor.

The hearing was held on August 20, 1975, before an Administrative Law Judge who, after the Commission had introduced the injunctions against, and the conviction of, Savage, heard various witnesses in support of Savage's application.[5] Savage himself did not testify. On September 29, 1975, the ALJ handed down his decision denying Savage's application, basing his decision on the ground that Savage had not met his burden of proving that the granting of registration would be in the public interest and deciding the case under section 8a(2)(B)(ii) and its "good cause" language. He held that § 8a(2)(B)(ii) took precedence over subsection (i) because the Commission's interpretative release defining "good cause" under subsection (ii) allowed denial of registration for a felony conviction for a securities violation within ten years,[6] whereas subsection (i) allowed a denial for any felony conviction at any time in the past. Consequently, the specific terms of subsection (ii) prevailed over the more general phrasing of subsection (i).

Savage appealed to the Commission. In its opinion filed March 1, 1976, the Commission affirmed the ALJ's decision, but under section 8a(2)(B)(i), holding that the introduction of the 1970 securities fraud conviction established a *prima facie* case of unfitness; that the burden then shifted to Savage to prove fitness; that Savage had failed to carry this burden; and that the denial should be effected under the specific statutory authority of subsection (i) rather than the Commission's interpretative release.

The petition for review by this court was filed on March 9, 1976.

### II.

Prior to the effective date of the Act, April 21, 1975, commodity futures were governed by the Secretary of Agriculture. 7 U.S.C. §§ 1–17a (1970). The Act placed the Secretary's duties in the hands of the Commission and added to persons covered thereby, among others, commodity trading advisors. The petitioner represents that

**5.** Savage offered five witnesses. The first, W. Monroe Stephenson, was Savage's attorney for the SEC injunction as well as the securities and mail fraud convictions. His testimony tried to minimize Savage's moral culpability in the incidents, but he did not deny that some wrongdoing had occurred. Robert Love, Savage's next witness, had been ITC's bookkeeper. He testified that neither he nor Savage had been aware of any illegality in the misappropriation of customer funds because of their relative inexperience and Savage's lack of ability to concern himself with details. Savage also called Duane Grizmore and Paul Cisneros, former employees of the Commodity News Service, who testified that they considered Savage to be very knowledgeable in the commodities markets and a source of considered and detailed trading opinions. Neither of them, however, was familiar with Savage's dealings with his own clients. Savage's final witness, Martin Castellano, was a floor broker for the MidAmerica Commodity Exchange. He explained that Savage had a reputation for fairness and integrity in meeting contractual obligations arising out of his floor trading, but he was also not personally familiar with Savage's dealings with clients as a commodity trading advisor. All of Savage's witnesses had been aware of some problems in Savage's past, though not all knew the exact nature of the convictions.

**6.** On July 3, 1975, the Commission had issued an interpretative release which elaborated on the words of subsection (ii), *i. e.*, "for other good cause shown," as follows:

"The Commission may refuse to register a person as a . . . commodity trading advisor . . . if

\* \* \* \* \* \*

B. Such person . . .

(i) Has been convicted within ten years preceding [*sic*] the filing of the application of any felony or misdemeanor which (1) involves any transactions or advice concerning any commodity or security; (2) arises out of conduct of the business of a . . . securities broker . . . or;

(ii) At the time of the application, is permanently or temporarily enjoined by . . decree of any court . . . or by agreement or settlement to which the . . . Securities and Exchange Commission is a party from acting as a . . . securities broker, securities dealer, [or] investment advisor . . . ." 40 Fed.Reg. 28126 (1975).

this is the first case to arise out of the first hearing held by the Commission.

He presents two constitutional challenges to the statutory provisions under which his application for registration was denied. First, he argues that a statutory requirement that a license be obtained in order to publish information and opinions regarding the commodities markets is an unwarranted impairment of First Amendment rights of freedom of speech and press; that the First Amendment covers newsletters even though they are published in anticipation of economic gain; and that prior restraints are presumed illegal especially where, as here, the Commission seeks to prohibit publication of a newsletter without any evidence whatsoever that it was used in a deceptive or fraudulent manner. Petitioner's second constitutional challenge to the registration section of the Act is that it is fatally vague in that it fails to define the word "unfit." The standard for denial is left so unclear that he feels men of common intelligence must guess at its meaning.

Savage next argues that the Commission violated the Administrative Procedure Act, 5 U.S.C. § 556(d) (1970), by requiring that he bear the burden of proving his fitness when the Commission did no more than introduce the prior conviction and injunctions. Indeed, Savage argues that to deny registration, something more than a prior conviction must be shown, for he does not feel that the statute will lend itself to the construction given it by the Commission.

■ Finally, Savage alleges that the Commission erred in concluding that he had failed to show the requisite mitigation and rehabilitation to prove his fitness to be a commodity trading advisor. For each of the injunctions as well as the conviction, Savage claims to have offered extensive testimony which showed a lack of moral culpability and demonstrated beyond question that the problems of his past would not adversely affect his performance as a trading advisor. The Commission, he charges, committed error by ignoring the extensive record showing Savage's advising capabilities and in refusing to recognize that Savage would be unable to commit the harm sought to be prevented by the statute because as an advisor he would not handle customer funds.[7]

Despite Savage's arguments, we conclude that the Commission correctly determined that Savage's felony conviction established his unfitness to be a registered trading advisor. The plain words of § 8a(2)(B)(i) of the Act reflect a Congressional judgment that proof of a felony conviction, without more, will establish a *prima facie* case of an applicant's unfitness. Once the Commission proved Savage's 1970 conviction, his application could have been denied; it became Savage's burden to go forward to persuade the Commission to exercise its discretion to allow him application despite his past. The proceeding conformed entirely with the guidelines of the Administrative Procedure Act; Savage's presentation simply failed to convince the Commission.

Savage's conviction involved a serious breach of duty owed to customers while he was engaged as a professional in the securities industry, an area with fiduciary duties analogous to those in the commodities industry. He ignores the clear import of the statute when he argues that the Commission must show proof beyond the conviction to support the charge of unfitness. The Commission retains discretion to permit registration if it should be persuaded that the applicant, although convicted of a felony, presents no danger to the public; but this fact does not cast doubt upon the au-

7. We note that Savage also contends that he was prejudiced by the fact that the Commission denied his application under subsection (i) of § 8a(2)(B) while the ALJ denied it under subsection (ii). The Commission, he asserts, upheld denial under subsection (i) intentionally to preclude Savage from arguing that under subsection (ii) the lapse of eight years since his conviction raised a strong presumption of reha-

bilitation. However, the variance in grounds employed by the Commission and the ALJ could not have prejudiced Savage. The order initiating the hearing on his application for registration did not limit inquiry to a particular subsection, and the Commission made clear throughout all of Savage's proceeding that his application was being attacked under both subsections (i) and (ii).

thority of the Commission to refuse registration on proof of the disqualifying act alone.

■ The Act's requirement of a hearing is not designed to add to the burden of proof of the Commission; it is meant only to assure the applicant his Due Process protections. Here, the Commission carefully considered the evidence offered by Savage regarding extenuating circumstances and rehabilitation; but since the evidence failed to show any rehabilitative progress and did not touch on Savage's relationships with his clients, the Commission correctly held that it failed to counterbalance the felony conviction. Furthermore, the Commission rightly rejected evidence offered to show that even if Savage were a trading advisor he could not "harm" the public because of the size of the market and the distance maintained between trading advisors and clients. Congress has already made the judgment that trading advisors hold a fiduciary relationship and must meet high standards so as to protect the public.

■ We find no merit in Savage's constitutional challenges to this regulatory Act. Commercial speech is entitled to a measure of First Amendment protection, *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council*, 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976), but it has long been recognized that the Amendment does not remove a business engaged in the communication of information from general laws regulating business practices. As Justice Harlan stated in *Curtis Publishing Co. v. Butts*, 388 U.S. 130, 150, 87 S.Ct. 1975, 1989, 18 L.Ed.2d 1094 (1967):

"A business 'is not immune from regulation because it is an agency of the press. . . .' Federal securities regulation, mail fraud statutes, and common-law actions for deceit and misrepresentation are only some examples of our understanding

that the right to communicate information of public interest is not 'unconditional.'" (Citations and footnotes omitted). *See also Securities and Exchange Commission v. Wall Street Transcript Corp.*, 422 F.2d 1371 (2d Cir. 1970). At issue here is not the worth or accuracy of Savage's publication, *The Commodity Exchange Bulletin.* He might well have advised his clients with skill as to what commodities to buy and sell. But Congress was interested in the character of the advisor and publisher—not his advice or publication—and in its desire to protect the public it had a right to evince this interest.

In appraising Savage's contentions, we must be mindful of a Congressional purpose, clearly evidenced at least since 1933, to protect the American investing and speculating public not only from fraud and fraudulent practices, but from those whose past actions indicate that they might be tempted to engage in such practices. Witness the Securities Act of 1933, 15 U.S.C. § 77a *et seq.* (1970), and *as amended* (Supp. V 1975), the Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq.* (1970), and the host of regulatory statutes since then. *See, e. g.,* the Investment Advisors Act of 1940, 15 U.S.C. § 80a–1 *et seq.* (1970). Congress cannot specify licensing requirements for each particular applicant but, of necessity, must within reason adopt somewhat general standards and authorize some agency to apply them.[8]

■ Unfortunately for Savage, his disagreement lies with Congress, not the courts. Congress has made explicit its legislative conclusion that trading advisors must meet a high standard of character in order to protect unsuspecting traders. Savage can hardly claim that the legislative directive that a prior felony conviction disqualifies an applicant is irrational when, as here, the prior felony was precisely the kind of secu-

---

8. As the Supreme Court stated in *American Power & Light Co. v. Securities and Exchange Commission*, 329 U.S. 90, 112–13, 67 S.Ct. 133, 146, 91 L.Ed. 103 (1946):

"It is a fundamental principle . . . that where Congress has entrusted an administra-

tive agency with the responsibility of selecting the means of achieving the statutory policy 'the relation of remedy to policy is peculiarly a matter for administrative competence.'" (Citation omitted).

rities fraud and misdealing that the Act is designed to prevent.

Accordingly, we deny review of the Commission's order refusing petitioner's registration as a commodity trading advisor.