SECURITIES AND EXCHANGE COM-
MISSION, Plaintiff-Appellee,

v.

Richard W. SUTER and Richard W. Suter
d/b/a National Investment Publishing
Company, Defendants-Appellants.

No. 83–1452.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 30, 1983.

Decided April 13, 1984.

As Amended Aug. 2, 1984.

**1296**

Gordon James Arnett, Chicago, Ill., for defendants-appellants.

Larry R. Lavoie, S.E.C., Washington, D.C., for plaintiff-appellee.

Before CUMMINGS, Chief Judge, WOOD, Circuit Judge, and GRANT, Senior District Judge.*

GRANT, Senior District Judge.

Defendant-Appellant, Suter, an investment adviser[1] registered with the Plaintiff-Appellee, the Securities and Exchange Commission, appeals from the issuance of a preliminary injunction which enjoins him from engaging in fraud or deceit upon his clients or prospective clients and from selling unregistered securities. The injunction requires him to maintain proper records, to make an accounting regarding funds received from the sale of securities, and to provide the SEC with copies of all of his future investment advisory publications. Suter raises a plethora of issues on appeal:

 I. Whether Suter's activities are subject to the Investment Advisers Act, 15 U.S.C. §§ 80b–1 to 80b–21 (1976);

 II. Whether the first amendment protects Suter's activities;

 III. Whether the district court erred in its findings of fact, its conclusions of law, and the conditions of the Preliminary Injunction; and

 IV. Whether the procedures followed during an SEC administrative action to revoke Suter's investment adviser registration or the district court's receipt of evidence from the SEC proceeding, violated Suter's constitutional right to:

 A. Counsel of his own choice;

 B. Have a jury determine the factual issues in the preliminary injunction hearing;

 C. Protection from unreasonable search and seizure;

 D. Due Process; and

 E. Protection against being forced to witness against himself?

For the reasons stated below, we AFFIRM the issuance of the preliminary injunction.

### Facts

Since 1969, Suter has provided investment advice through newsletters published by The National Investment Publishing Company [National], his sole proprietorship. From June 1974 to August 1982, Suter published the "National Portfolio Reporter," an investment newsletter containing his strategy for investing in the stock market and specific buy and sell recommendations. In August 1982, he included advice about commodities[2] in the newsletter and changed its name to the "Profit Reporter."

Suter uses monthly mass mailings to obtain clients for his advisory services. He promotes his newsletters by referring to himself as "one of the very few investment advisers in the industry today who has accurately called *every major turn* in the economy since...." He indicates that his newsletters give *"accurate, specific, in-depth* buy and sell recommendations" to an "elite group of investors." Suter's advertisements extol his ability and success as an investment adviser by claiming that his investment advice regularly earns his followers "Profits of 200%, 300%, 400% and More." The advertisements contain testimonials from satisfied customers and emphasize Suter's twenty years of in-depth

---

* Honorable Robert A. Grant, Senior District Judge for the Northern District of Indiana, is sitting by designation.

**1.** Suter has appealed an SEC affirmation of the revocation of his registration as an investment adviser, *see In the Matter of Richard W. Suter,* [current] Fed.Sec.L.Rep. (CCH) ¶ 83,444 (October 17, 1983), *appeal docketed,* No. 83–3011 (7th Cir. Nov. 16, 1983).

**2.** While Suter had been registered with the Commodity Futures Trading Commission as a commodity trading adviser, the CFTC had revoked his registration in April 1980 on the basis of findings that Suter had engaged in fraudulent conduct.

research and market experience. They stress Suter's "M.B.A. in the financial field from DePaul University, Chicago," the "large number of graduate seminars in economics [taken] at Cambridge University, England," and his investment adviser registration with the SEC. Finally, the advertisements guarantee a "no questions asked" refund to anyone not satisfied with Suter's investment advice.

The SEC brought an action to enjoin Suter pursuant to its authority under 15 U.S.C. § 80b–9(e) (1976). At the preliminary injunction hearing, the district court found that Suter's advertisements violated SEC regulations, that many of the representations made in those advertisements were blatantly false, that Suter has systematically cheated his subscribers and that Suter has made unregistered offerings of securities.

Suter's advertisements failed to include a list of all buy or sell recommendations made by Suter during the preceding year and to disclose any difficulties or limitations in using his financial indicators.[3] During the course of the hearing, the evidence revealed that two of Suter's "satisfied" subscribers, to whom his advertisements attributed glowing testimonials, had never made the statements; and, in fact, one of the subscribers had demanded a retraction and the other had never subscribed to any of National's publications.

Suter's advertisements not only misrepresented what others said about him, but also, they exaggerated his experience and falsified his educational background. Suter is a thirty-five year old man, not the man of twenty years experience depicted in his advertisements. The registrar from DePaul University, Chicago, Illinois, testified at the preliminary injunction hearing that Suter has no M.B.A. degree from the University. The advertisements failed to note that the Commodities Futures Trading Commission has revoked Suter's adviser registration, and that the SEC has initiated a proceeding to revoke his investment adviser's registration. Finally, Suter consistently refused to honor his money-back guarantees.

National allowed subscribers to pay for their subscriptions with a check or by authorizing National or Suter to bill the subscriber's credit cards. Suter developed a scheme by which he billed, and received credit for, at least 178 credit card subscriptions which were never ordered. In an effort to conceal his bilking, Suter either destroyed the records related to those billings or completely neglected to keep records. Both practices violate the Investment Advisers Act.[4]

In December 1981, Suter solicited investments in National's subscription list revenues through advertisements and letters. Each investment unit of $6,750 would pay for the mailing of 25,000 advertisements to known buyers of newsletters. Suter promised to use part of the resulting subscription receipts to fill the new subscriptions and to use the remaining revenue for additional mailings, until the end of 1981. In 1982, investors would receive the income from subscription renewals from the subscriptions attributed to their mailings.

Suter's solicitation material failed to inform investors and prospective investors that his tax shelter had not been registered with the SEC. He did not disclose to buyers and possible buyers that his registration with the Commodity Futures Trading Commission had been revoked, thus jeopardizing, if not eliminating, prospective revenues from National's investment newsletter on commodities which had the largest subscription base of any of National's publications. Suter concealed National's 1979 mailing list income, National's 1980 income from subscription renewals, all financial information about both himself and National, and the degree of risk involved in the tax shelter. In addition to denying potential investors material information about the

---

**3.** 17 C.F.R. § 275.206(4)–1(a) (1983) requires that this information be included in advertisements by investment advisers.

**4.** *See* 15 U.S.C. § 80b–4 (1976); 17 C.F.R. § 275.204–2 (1983).

tax shelter, Suter never registered the tax shelter with the SEC as a security. ·

In January 1982, Suter made a solicitation similar to the December 1981 solicitation. The 1982 offering had the same defects and deficiencies as the 1981 offering.

After reviewing the evidence and the testimony, the district court found that Suter had violated the anti-fraud provisions of the Investment Advisers Act, 15 U.S.C. § 80b–6 (1976) and the registration and anti-fraud provisions of the Securities Act, 15 U.S.C. §§ 77e, 77g (1976), and the Securities Exchange Act, 15 U.S.C. § 78j (1976). Since the district court found good cause to believe that Suter would continue his illegal practices, it issued a preliminary injunction enjoining Suter from employing fraud or deceit in the sale of his or National's materials, from advertising his or National's publications unless the advertisements comply with regulations promulgated by the SEC, and from offering for sale and from selling unregistered securities, from offering for sale and selling securities by deceptive means. The preliminary injunction requires that, during the course of this litigation, Suter and National allow the SEC to inspect the books and records which investment advisers are required to keep, and that he and National maintain the proper records. The preliminary injunction also required Suter to make a detailed accounting of all funds received by him and National from the sale of securities and to provide the SEC with copies of all of his future investment advisory publications.

I. Whether Suter's activities are subject to the Investment Advisers Act?

■ 15 U.S.C. § 80b–2(a)(11) (1976) defines "investment adviser":

(11) "Investment adviser" means any person who, for compensation, engages in the business of advising others, either directly or *through publications or writings,* as to the value of securities or as to the advisability of investing in, purchasing, or selling securities, or who, for compensation and as part of a regular busi-

ness, issues or promulgates analyses or reports concerning securities....

*Id.* (emphasis added). Suter's activities clearly fall within this definition. His investment letters contain investment advice about the stock market and through those letters he gives particular buy and sell recommendations. Suter even promotes his publications as vehicles for providing investment advice.

Suter asserts that he is not an investment adviser by virtue of 15 U.S.C. § 80b–2(a)(11)(D) (1976) which excludes "the publisher of any bona fide newspaper, news magazine or business or financial publication of general and regular circulation" from the definition. The two Federal Election Commission cases offered by Suter to support his position, *Federal Election Commission v. Phillips Publishing, Inc.,* 517 F.Supp. 1308 (D.D.C.1981) and *Reader's Digest Association, Inc. v. Federal Election Commission,* 509 F.Supp. 1210 (S.D.N.Y.1981), shed little light on the meaning of "bona fide newspaper" under the Investment Advisers Act.

For the purposes of the Investment Advisers Act,

[t]he phrase "bona fide" newspapers ... means those publications which do not deviate from customary newspaper activities to such an extent that there is a likelihood that the wrongdoing which the Act was designed to prevent has occurred. The determination of whether or not a given publication fits within this exclusion must depend upon the nature of its practices rather than upon the purely formal "indicia of a newspaper" which it exhibits on its face and in the size and nature of its subscription list.

*Securities and Exchange Commission v. Wall Street Transcript Corporation,* 422 F.2d 1371, 1377 (2d Cir.), *cert. denied,* 398 U.S. 958, 90 S.Ct. 2170, 26 L.Ed.2d 542 (1970) (footnotes omitted). The SEC has adopted the subjective approach of *Wall Street Transcript* and applies the bona fide newspaper exception "only where, based on the content, advertising material, readership, and other relevant factors, a publica-

tion is not primarily a vehicle for distributing investment advice." Applicability of Investment Advisers Act to Certain Publications, 42 Fed.Reg. 2953 n. 1 (1977) (codified at 17 C.F.R. § 276) (citing *Wall Street Transcript*, 422 F.2d at 1371).

The nature of Suter's newsletters and the practices of his publishing company, National, prevent Suter and National from availing themselves of the bona fide newspaper exception to the definition of investment adviser. While Suter's publications have some of the purely formal indicia of a newspaper, their content consists of investment advice about the stock market, particular buy and sell recommendations and reports on investments. Suter advertises these newsletters as vehicles for investment advice and refers to himself as an investment adviser. The newsletters' readership appears to be drawn from the ranks of investors or potential investors and Suter claims in his advertisements that his readership is an elite group of investors. Based on the nature of Suter's publishing practices, this Court finds that Suter does not meet the bona fide newspaper exception to the Investment Advisers Act.

II. Whether the first amendment protects Suter's publication?

■■■ The first amendment protects commercial speech because of society's "strong interest in the free flow of commercial information." *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council*, 425 U.S. 748, 764, 96 S.Ct. 1817, 1827, 48 L.Ed.2d 346 (1976); *see also Central Hudson Gas & Electric Corp. v. Public Service Commission of New York*, 447 U.S. 557, 561–64, 100 S.Ct. 2343, 2348–2350, 65 L.Ed.2d 341 (1980). However, "the Amendment does not remove a business engaged in the communication of information from general laws regulating business practices." *Savage v. Commodity Futures Trading Commission*, 548 F.2d 192, 197 (7th Cir.1977). A business, such as Suter's, cannot avoid regulation merely because it engages in publishing. "[T]he right to communicate information of public interest is not 'unconditional.'" *Id.* (quoting *Curtis Publishing Co. v. Butts*, 388 U.S. 130, 150, 87 S.Ct.

1975, 1989, 18 L.Ed.2d 1094, *reh'g denied*, 389 U.S. 889, 88 S.Ct. 11, 19 L.Ed.2d 197 (1967)).

■■■ In *Central Hudson Gas*, the Supreme Court set forth a four-part analysis for applying the first amendment to the suppression or regulation of commercial speech:

> At the outset, we must determine whether the expression is protected by the First Amendment. For commercial speech to come within that provision, it at least must concern lawful activity and not be misleading. Next, we ask whether the asserted governmental interest is substantial. If both inquiries yield positive answers, we must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest.

*Central Hudson Gas*, 477 U.S. at 566, 100 S.Ct. at 2351. *See In re R.M.J.*, 455 U.S. 191, 203, 102 S.Ct. 929, 937, 71 L.Ed.2d 64 (1982) for the corollary test applied to advertising for professional services.

Suter's advertisements do not meet the first step of the *Central Hudson Gas* analysis, *i.e.*, that they "not be misleading." They falsely use others' names to praise Suter's ability. They blatantly lie about his experience, education and qualification. Finally, they unashamedly carry a worthless money-back guarantee. In the context of advertising professional services, failure to meet the first step of the *Central Hudson Gas* analysis will not deny a professional his first amendment protection because "restrictions upon such advertising may be no broader than reasonably necessary to prevent the deception." *In re R.M.J.*, 455 U.S. at 203, 102 S.Ct. at 937.

The temporary injunction placed upon Suter and National prohibits the mailing or distribution of any publication, newsletter, or bulletin discussing the securities, commodities or bullion markets to anyone, unless a copy of the publication, newsletter or bulletin is contemporaneously sent to the SEC. This Court cannot say that this restriction is "broader than reasonably necessary to prevent the deception." This Court

reaches no conclusion regarding what is reasonably necessary to prevent the deception permanently. Suter and the SEC remain entitled to their day in court to resolve this issue.

III. Whether the district court erred in its findings of fact, its conclusions of law and the conditions of the preliminary injunction?

In compliance with the Federal Rules of Civil Procedure, the district court "set forth the findings of fact and conclusions of law which constitute[d] the grounds of its action." Fed.R.Civ.P. 52(a). Suter argues that the district court erred by not including as a finding of fact that Suter and National are engaged in the investment advisory business and that the tax shelter offered by Suter in 1981 was a security under the Securities Act. Suter challenges the district court's conclusions of law by asserting that they fail to state that he is an investment adviser, and since he has subscribers and not clients, they incorrectly conclude that he engages in fraud and deceit upon clients and prospective clients.

A. Findings of Fact.

On review, "[f]indings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." *Id.; see Alexander v. Chicago Park District,* 709 F.2d 463, 467 (7th Cir.1983); *see also Clark v. Universal Builders, Inc.,* 706 F.2d 204, 206 (7th Cir.1983). When, as in the instant case, a district court accepts the findings of fact of the prevailing party as its own, this Court exercises a somewhat more critical review of those findings within the limits of Rule 52(a). *Alexander,* 709 F.2d at 467; *American Fletcher Mortgage Company, Inc. v. Bass,* 688 F.2d 513, 517 n. 5 (7th Cir.1982).

Critically reviewing the district court's findings of fact in light of the record and the evidence, this Court does not find them clearly erroneous. The district court did not err by not including a finding of fact that Suter is an investment adviser engaging in the investment advisory business. Such a determination involves both fact and law and the district court properly found that National, Suter's sole proprietorship, *Securities and Exchange Commission v. Suter,* No. 81 C 3865, slip op., Findings of Fact, ¶¶ 2–3 (Feb. 11, 1983), was an investment adviser and not excluded from the coverage of the Investment Advisers Act as a bona fide newspaper, *id.,* Conclusions of Law ¶¶ 1–3.

The determination that Suter and National offered a tax shelter investment opportunity to the public in January 1982 also involves both fact and law. While no finding of fact determines this opportunity to be a security subject to regulation by the SEC, paragraph 17 of the district court's conclusions of law explicitly states that this tax shelter is an investment contract which falls under the definition of security contained in section 2(1) of the Securities Act of 1933. 15 U.S.C. § 77b(1) (1976). Since the investment opportunity is a security, paragraph 126 of the district court's findings of fact points out that Suter and National have not filed a registration statement with the SEC. After a careful review of the record and the briefs and arguments on appeal, we hold that the district court properly found that the investment opportunity is a security and has not been registered with the SEC.

B. Conclusions of Law.

An appellate court may properly conduct an independent review and resolution of questions of law determined by a district court. *See Wiesmueller v. Interstate Fire & Casualty Company,* 568 F.2d 40, 42 (7th Cir.1978) (appellate courts may properly conduct an independent review of the construction of an insurance policy because it is a question of law); *Kalmich v. Bruno,* 553 F.2d 549, 552 (7th Cir.), *cert. denied,* 434 U.S. 940, 98 S.Ct. 432, 54 L.Ed.2d 300 (1977) (questions involving the law of a foreign country are purely "questions of law" and appellate courts may resolve such questions on the basis of their own independent research and analysis). Conclusions of law made by a district court do not bind a reviewing court.

■ Independently applying the law to the questions raised by Suter, this Court finds that no error has been made with respect to the law. Suter is an investment adviser and subject to regulation by the SEC. *See* 15 U.S.C. § 80b–2(a)(11) (1976); *see also* discussion of Issue I, *supra.* In 1982, Suter offered an investment opportunity in an investment contract which is a security under 15 U.S.C. § 77b(1). *See Securities & Exchange Commission v. W.J. Howey Co.,* 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946).

Suter would have this Court draw a distinction between clients and subscribers and hold that he is not an investment adviser merely because he has only subscribers. Since the code does not draw that distinction, this Court will not second-guess its drafters who wrote:

> [I]t is found that investment advisers are of national concern, in that, among other things—
>> (1) their advice, counsel, publications, writings, analyses, and reports are furnished and distributed, and their contracts, *subscription agreements, and other arrangements with clients* are negotiated and performed, by the use of the mails and means and instrumentalities of interstate commerce;

15 U.S.C. § 80b–1 (1976) (emphasis added).

C. Conditions of the Preliminary Injunction.

■ The district court has discretion in decisions to grant or deny preliminary injunctions and "this Court will not substitute its judgment for that of the district court unless we are convinced that the court abused its discretion." *Wesley-Jessen Division of Schering Corporation v. Bausch & Lomb Incorporated,* 698 F.2d 862, 864 (7th Cir.1983); *see also Martin v. Helstad,* 699 F.2d 387, 389 (7th Cir.1983).

> In cases involving investment advisors, the district court must initially look to 15 U.S.C. § 80b–9(e) (1976) in determining whether to issue an injunction. The statute provides that upon a showing that an investment advisor has engaged, is engaged, or is about to engage in any such act or practice, [fraud or deceit on clients and prospective clients] or [in] aiding, abetting, counseling, commanding, inducing, or procuring any such act or practice, a permanent or temporary injunction or decree or restraining order shall be granted without bond.

15 U.S.C. § 80b–9(e) (1976); *see also* 15 U.S.C. §§ 77t(b), 78u(d) (1976).

Once a violation has been established, the district court must determine "whether there is a reasonable likelihood that the defendant, if not enjoined, will again engage in the illegal conduct." *Securities and Exchange Commission v. Bonastia,* 614 F.2d 908, 912 (3d Cir.1980) (citations omitted); *see also Securities and Exchange Commission v. Holschuh,* 694 F.2d 130, 144 (7th Cir.1982).

> In predicting the likelihood of future violations, a court must assess the totality of the circumstances surrounding the defendant and his violation, including such factors as the gravity of the harm caused by the offense; the extent of the defendant's participation and his degree of scienter; the isolated or recurrent nature of the infraction and the likelihood that the defendant's customary business activities might again involve him in such transactions; the defendant's recognition of his own culpability; and the sincerity of his assurances against future violations.

*Holschuh,* 694 F.2d at 144. *See also Securities and Exchange Commission v. Zale Corp.,* 650 F.2d 718, 720 (5th Cir.), *cert. denied sub nom. Underwood v. Securities and Exchange Commission,* 454 U.S. 1124, 102 S.Ct. 973, 71 L.Ed.2d 111 (1981); *Securities and Exchange Commission v. Murphy,* 626 F.2d 633, 655 (9th Cir. 1980); *Bonastia,* 614 F.2d at 912; *Securities and Exchange Commission v. Commonwealth Chemical Securities, Inc.,* 574 F.2d 90, 100 (2d Cir.1978).

■ Since a preliminary injunction is only temporary and is subject to change after a full hearing and the opportunity for more mature deliberation, this Court finds it sufficient to indicate that it has carefully reviewed the briefs and the record of this case and from our examination thereof, we

find no abuse of discretion by the trial judge.

IV. Whether the procedures followed during an SEC administrative action against Suter, or the district court's receipt of evidence from that proceeding violate any of Suter's constitutional rights?

A. Right to counsel of his own choice.

 The sixth amendment guarantees the right to have the assistance of counsel in all criminal prosecutions. U.S. Const. amend. VI. In noncriminal trials which pose no threat of imprisonment, courts may take a case-by-case approach to furnishing counsel. *See Gagnon, Warden v. Scarpelli,* 411 U.S. 778, 788, 93 S.Ct. 1756, 1762, 36 L.Ed.2d 656 (1973). In agency proceedings, triers may not deny those coming before them the right to qualified representation. 5 U.S.C. § 555(b) (1976). However, a party's

> right to be represented by the attorney of his choice cannot be insisted upon to such a degree that it obstructs the reasonable and orderly procedures of the court. The sixth amendment does not give an accused the power to manipulate his choice of counsel to delay the orderly progress of his case.

*United States ex rel. Spurlark v. Wolff,* 683 F.2d 216, 220 (7th Cir.1982) (citations omitted).

 In the instant case, Suter retained three different attorneys during the nine months before trial. Each attorney withdrew from the case only days before each set hearing date. The district court did not deny Suter his due process right to be represented in front of an agency and to be represented by counsel in a trial not resulting in imprisonment. Suter may not manipulate procedural safeguards in an effort to delay the orderly progress of the case.

Suter offers his remaining contentions completely without the support of authority and his insubstantial arguments do not merit discussion by this Court.

We AFFIRM the district court's issuance of the Preliminary Injunction.