HARRY T. EDWARDS, Circuit Judge,
dissenting.
The Equal Access to Justice Act (“EAJA”) provides that:
*1179 a court shall award to a prevailing party ... fees and other expenses ... incurred by that party in any civil action ... brought by or against the United States ... unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust..
28 U.S.C. § 2412(d)(1)(A) (2000). The Supreme Court’s decision in Pierce v. Underwood, 487 U.S. 552, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988), clearly and firmly controls the level of involvement by the courts of appeals in the application of this statutory provision.
In Underwood, the Court instructed that, in considering whether the Government’s litigating position was “substantially justified” within the meaning of EAJA, a court of appeals does not engage in de novo review. Id. at 557-63, 108 S.Ct. at 2545-50. Rather, a district court’s judgment that fees are due to a prevailing party under EAJA is entitled to significant deference under an abuse-of-discretion standard. Id. Indeed, the Court made it clear that, even when “the attorney’s fee determination ... involvefs] a judgment ultimately based upon evaluation of the purely legal issue governing the litigation,” the district court’s judgment is still subject only to the most limited review. Id. at 560, 108 S.Ct. at 2547.
In reaching this conclusion, the Court in Underwood was counseled by considerations of “sound judicial administration.” Id. at 563, 108 S.Ct. at 2549. Specifically, the Court sought to avoid the “unusual expense” associated with requiring an appellate court to “undertake the unaccustomed task of reviewing the entire record, not just to determine whether there existed the usual minimum support for the merits determination made by the factfin-der below, but to determine whether urging of the opposite merits determination was substantially justified.” Id. at 560, 108 S.Ct. at 2547. • The Court indicated that this would be a poor use of court of appeals resources, because it “will either fail to produce the .normal law-clarifying benefits that come from an appellate decision on a question of law, or else will strangely distort the appellate process.” Id. at 561, 108 S.Ct. at 2548. In short, Underwood was quite plain in saying that the courts of appeals have no business second-guessing district court determinations whether the Government’s litigating position was “substantially justified” within the meaning of EAJA.
Thus, under Underwood, a district court’s judgment may be reversed only when the record “commands the conclusion that the Government’s position was substantially justified.” Id. at 570-71, 108 S.Ct. at 2552 (emphasis added). Why such a tight rein on the standard of review? It is really quite simple. ■ The abuse-of-discretion standard of review is required because judgments on what is substantially justified are inherently discretionary and therefore ■ not reasonably susceptible to more probing review. Id. at 561-62, 108 S.Ct. at 2548-49. In other words, as the Court said in Underwood, the “substantially justified” formulation admits of no “useful generalization.” Id. at 562, 108 S.Ct. at 2548. Therefore, “ ‘[o]ne of the “good” reasons for conferring discretion on the trial judge is the sheer impracticability of formulating a rule of decision for the matter in issue.’ ” Id. at 561, 108 S.Ct. at 2548 (quoting Maurice Rosenberg, Judicial Discretion of the Trial Court, Viewed from Above, 22 Syracuse L. Rev. 635,- 662 (1971)).. .
There is no doubt that we are bound to follow the principles enunciated in Underwood. And adherence to Underwood means that our review of the District Court’s decision is narrow, limited, and *1180 deferential. Under this standard of review, there is no conceivable way that the record in this ease can be seen to “command” the conclusion that the Government’s position was substantially justified.
The merits litigation in this case did not pose a difficult legal issue. The Commodity Futures Trading Commission (“Commission”) had been enforcing a provision under the Commodity Exchange Act (“CEA”), 7 U.S.C. § 6m(1), that required all Commodity Trading Advisors (“CTAs”) to register. The disputed legislation provided that “[i]t shall be unlawful for any commodity trading advisor ... unless registered under this chapter, to make use of the mails or any means or instrumentality of interstate commerce in connection with his business as such commodity trading advisor.” 7 U.S.C. § 6m(l). Two groups of plaintiffs challenged the Commission’s enforcement of this provision. One group, the “publishers,” was composed of persons who published nonpersonalized books, newsletters, Internet sites, instruction manuals, and computer software that provided information, analysis, and advice on commodity futures trading. The publishers did not service individual clients or execute trades on behalf of any clients. The second group, the “subscribers,” was composed of members of the public who read and used the publishers’ publications. The gravamen of the complaint was that, while the publishers’ actions made them CTAs under the CEA, the application of the CEA’s registration requirement to them, as opposed to the more typical account-managing CTAs, constituted an unconstitutional prior restraint infringing their freedom of speech under the First Amendment.
The District Court held that the publications at issue were “fully protected speech,” as opposed to “commercial speech.” Taucher v. Born, 53 F.Supp.2d 464, 480-81 (D.D.C.1999). The District Court concluded that, as a prior restraint on fully protected speech, the registration requirement could not survive the searching scrutiny applied to such restraints. Id. at 481-82. On August 19, 1999, the Commission appealed the District Court’s decision to this court, where the case was briefed and scheduled for oral argument. However, prior to argument, the Commission adopted regulations exempting persons like the publishers in this case from the registration requirement, thereby mooting the case. See 17 C.F.R. § 4.14(a)(9) (2004) (adopted Mar. 10, 2000). The parties then agreed to voluntarily dismiss the appeal. See Taucher v. Rainer, No. 99-5293, 2000 WL 516081 (D.C.Cir.Mar. 28, 2000) (per curiam), reprinted in Joint Appendix at 149.
It is hardly surprising that the Government elected not to appeal the District Court’s judgment on the merits, for that judgment was eminently correct and unassailable. Nor is it surprising that, in holding the Government liable under EAJA, the Magistrate Judge who heard and decided the case found that the Commission’s position in the merits litigation was baseless and thus not substantially justified. See Taucher v. Rainer, 237 F.Supp.2d 7 (D.D.C.2002).
The Magistrate Judge first noted that the Commission seemed not to recognize that the registration requirement, as a pri- or restraint, was subject to more than “intermediate scrutiny”:
For the defendants to say, in the teeth of this jurisprudence, that prior restraints upon publication are subject to, at most, intermediate scrutiny was to ignore the central principle of the jurisprudence pertaining to prior restraints — that such restraints, sui gen- *1181 eris, come burdened with a heavy presumption against their - constitutionality and therefore have historically been judged by a much more stringent standard than statutes that have an incidental effect on speech. To so misunderstand the controlling law and to equate a prior restraint that conditioned speech upon governmental approval with a statute that had only an incidental effect on speech was to confuse most unreasonably two entirely different principles of First Amendment adjudication.
Id. at 13. The Magistrate Judge then held that the Commission was not substantially justified in its position that the disputed registration restriction constituted a permissible professional regulation, as opposed to an impermissible regulation of speech:
Under [the Commission’s] theory, it was as appropriate to regulate the publishers, who provided information to commodity investors, as it was to regulate CTA’s, who actually managed clients’ accounts. To the defendants, the medium was irrelevant; whether it was a published article, a website, or computer software, the message communicated— buy or don’t buy this commodity — was the same. Any such communication was as subject to government regulation as any other. Thus, there was no significant difference between the CTA telling a client, who had retained her, to buy cocoa and a published article making the same recommendation.
But, as Holmes pointed out, “every idea is an incitement.” Gitlow v. New York, 268 U.S. 652, 673, 45 S.Ct. 625, 632, 69 L.Ed. 1138 (1925) (Holmes, J., dissenting). If encouraging a person to engage in a particular economic activity is subject to government regulation, irrespective of the medium, or because some of the people who do it have clients who rely upon them for advice, then, reductio ad .absurdum, the government could regulate what appears in the Wall Street Journal, Barrons and Money Magazine. These publications all have specific columns providing, investment . advice and, unless they are wasting their time, hope that their readers will use it. To refuse to see the difference between the broker who gives her advice to her client and the publisher of a newsletter is to ignore the cases upon which Judge Urbina relied that discuss the distinction between a professional’s advice to a client and a writer’s advice to whoever who will read her and use it. Taucher, 53 F.Supp.2d at 476-79. . That distinction is so self-evident and obvious that the defendants? ignoring it cannot be justified. . ...
Id. at 14-15 (citations omitted).
In essence, the Magistrate Judge found that, because the Government’s positions in the merits litigation bordered on the absurd, the positions could not possibly be “substantially justified.” The Judge was quite correct on both counts.
Before this court, the Government offered nothing of substance to suggest that the Magistrate Judge’s decision reflected an abuse of discretion. Rather, the Government’s brief to this court offered a new ploy, suggesting that the Commission was “duty-bound” to- defend the constitutional challenge to the CEA and that this constituted substantial justification for its position. Commission’s Br. at 27-36. This argument is specious. In Grace v. Burger, 763 F.2d 457 (D.C.Cir.1985), this court did state in a footnote that “situations in which the government’s defense of the constitutionality of a federal statute fails the ‘substantially justified’ test should be exceptional.” Id. at 458 n. 5. However, the context reveals that the court intended this *1182 statement not as a normative principle, but merely as a prediction, noting that Congress is under an “obligation to self-police its measures for compatibility with the Constitution.” Id. Thus, the court simply stated its expectation that it would be rare that Congress would enact a statute so clearly unconstitutional that an agency would not be substantially justified in defending it. Indeed, in the main text of the opinion, the court explicitly stated:
[W]e do not rule, nor did the district court, that the government is forever and always “substantially justified” in defending in court the constitutionality of an act of Congress, whatever the statute may say, and on any ground a legal mind might conceive. As we have explained, the government bears the burden on the substantial justification plea, and to carry that burden, the government must demonstrate that its litigation position had a solid basis in fact and law.
Id. at 458 (footnote and citation omitted).
The Government also contends that its defense of the unconstitutional registration requirement was substantially justified because its position found support in the Seventh Circuit’s 1977 decision in Savage v. CFTC, 548 F.2d 192 (7th Cir.1977). This, too, is a specious argument. If considered in isolation, Savage does indeed provide some support for the Commission’s position. However, Savage was completely undermined by the Supreme Court’s later decision in Lowe v. SEC, 472 U.S. 181, 105 S.Ct. 2557, 86 L.Ed.2d 130 (1985). In Lowe, the Court held that the petitioners could not be permanently enjoined from publishing nonpersonalized investment advice and commentary in securities newsletters for the reason that they were not registered as investment advisers under § 203(c) of the Investment Advisers Act. The majority opinion by Justice Stevens held that, because petitioners’ publications fell within the statutory exclusion for bona fide publications, none of the petitioners was an “investment adviser” as defined in the Act.
Justice White wrote a long concurring opinion in Lowe, in which Chief Justice Burger and then-Justice Rehnquist joined, concluding that the prior restraint of the publishers was forbidden under the First Amendment. Id. at 211-36, 105 S.Ct. at 2573-86 (White, J., concurring in result). Justice White focused on the point where regulation of a profession leaves off and prohibitions on speech begin:
One who takes the affairs of a client personally in hand and purports to exercise judgment on behalf of the client in the light of the client’s individual needs and circumstances is properly viewed as engaging in the practice of a profession. Just as offer and acceptance are communications incidental to the regulable transaction called a contract, the professional’s speech is incidental to the conduct of the profession. If the government enacts generally applicable licensing provisions limiting the class of persons who may practice the profession, it cannot be said to have enacted a limitation on freedom of speech or the press subject to First Amendment scrutiny. Where the personal nexus between professional and client does not exist, and a speaker does not purport to be exercising judgment on behalf of any particular individual with whose circumstances he is directly acquainted, government regulation ceases to function as legitimate regulation of professional practice with only incidental impact on speech; it becomes regulation of speaking or publishing as such, subject to the First Amendment’s command ....
Id. at 232, 105 S.Ct. at 2584 (footnote omitted) (White, J., concurring in result).
*1183 Justice White’s concurring opinion in Lowe did not rest on novel statements of law; it was grounded in decades of Supreme Court precedent. See, e.g., id. at 229-30, 105 S.Ct. at 2588 (White, J., concurring in result) (discussing the relevant precedent and citing a number of cases in which the Supreme Court struck down pri- or restraints on ostensibly professional speech). And the concurring opinion in Loiue is consistent with the majority opinion. Indeed, although the majority opinion decided the case on statutory grounds, it strongly suggested that application of the disputed statute to publishers of nonper-sonalized investment advice would be unconstitutional. See id. at 226, 105 S.Ct. at 2581 (White, J., concurring in result) (“One does not have to read the Court’s opinion very closely to realize that its interpretation of the Act is in fact based on a thinly disguised conviction that the Act is unconstitutional as applied to prohibit publication of newsletters by unregistered advisers.”).
The abuse-of-discretion standard obviously does not mean that a district court’s exercise of discretion is unreviewable. See United States v. Criden, 648 F.2d 814, 817-19 (3d Cir.1981). “ ‘[UJnreviewable discretion offends a deep sense of fitness in our view of the administration of justice.’ ” Id. at 818 (quoting Rosenberg, supra, at 641-42). What it does mean, however, is that review is substantially limited, especially when, as with cases under EAJA, litigating circumstances vary so much that it is difficult to frame generally applicable principles constricting the trial court’s exercise of discretion. At bottom, the abuse-of-discretion standard focuses on the reasonableness of the trial court’s judgment, and the measure of reasonableness depends upon the facts of each particular case before the court. Id. at 817-18.
As noted above, under EAJA, a district court’s judgment that fees are due to a prevailing party is entitled to significant deference because the “substantially justified” formulation admits of no “useful generalization.” Underwood, 487 U.S. at 562, 108 S.Ct. at 2548. With this in mind, the Court in Underwood found that, when the “objective indicia” in a case (such as “the objective fact that the merits were decided at the pleadings stage”) fail to provide a “conclusive answer,” id. at 568, 108 S.Ct. at 2551, and the district court’s exercise of discretion rests on a view of the facts and the law that is not unreasonable, id. at 568-571, 108 S.Ct. at 2551-53, the appellate court cannot find that the district court abused 'its discretion. It does not matter whether the appellate court agrees or disagrees with the trial court. All that matters is that the trial court’s judgment rests on a reasonable view of the record before it.
In this case, the Magistrate Judge found that the Government’s positions in the merits litigation were far from substantially justified, because they were largely baseless. If the decision were mine to make, I would hold that the Government’s positions bordered on frivolous. But my job here is not to make that decision. Rather, as the Court in Underwood instructed, my colleagues and I are limited to determining only whether the District Court’s judgment amounts to an abuse of discretion. I think it is absolutely clear on the record at hand that the District Court’s judgment in this case cannot be found wanting under any accepted’ construction of the abuse-of-discretion standard of review. Appellees were properly awarded fees under EAJA, and the judgment in their favor should be affirmed.