W. SHARP, Judge.
Residential Communities of America (RCA) appeals from a judgment in its declaratory suit which determined that its uncompleted units in the Escondido Condominium are bound by an amendment to the declaration of condominium, although the amendment was made without RCA’s consent or joinder. The trial court held that since RCA was not presently holding any completed condominium units for sale, it was not a “developer,” and its joinder was not necessary. We disagree with the trial court’s interpretation of the condominium documents and its application of Florida’s Condominium Law (Chapter 718). Accordingly, we reverse.
The facts in this case are not in dispute. Beginning in 1979, RCA developed, acted as general contractor, and initially marketed the Escondido Condominium in Seminole County, Florida. The condominium was planned to be developed in three phases. By 1984 RCA had built and sold 203 units, but it still owned two undeveloped parcels in the last phase when it turned over management and control of the condominium to the Escondido Community Association (ECA).
RCA continued to hold the undeveloped parcels. They were improved to the extent that parking lots were completed, and water, sewer, and telephone lines for the planned additional 27 units were installed. But at the time this lawsuit was filed in 1989, RCA no longer held any completed units for sale.[1]
Article XVII of the Declaration of Condominium sets out how the Declaration can be amended. One is by a two-thirds vote of the Board of Directors, and another is by a two-thirds vote of the owners. Both require that the “developer” consent to or “join” any amendment, in order to “affect” its rights. It provides:
ARTICLE XVII. — AMENDMENTS
Except as expressly set forth elsewhere herein, this Declaration of Covenants and Restrictions may be amended by a two-thirds (⅜) vote of the Board of Directors of the ECA or an instrument executed with the same formalities as a deed by Members of the ECA with at least two-thirds (⅜) of the total outstanding votes of the ECA, which Amendment shall thereafter be recorded in the Public Records of Seminole County, Florida, and shall thereupon become a part of this Declaration of Covenants and Restrictions as though the same were first set forth herein. Notwithstanding the foregoing, an Amendment to this Declaration shall not affect in any manner whatsoever the rights of the Developer unless■ the Developer joins in said Amendment, (emphasis supplied).
The condominium was originally marketed by RCA as an adult community. Pursuant to Article IX(J) of the Declarations, children under the age of seventeen were not permitted to reside in the units for a time longer than sixty days. The condominium population of Escondido was and has remained essentially as it began, as a residential community for senior citizens.
However, the Fair Housing Amendments Act of 1988[2] cast some doubt about the *124 continued enforceability of the condominium’s restriction against children. In order for such a restriction to be enforceable, the federal law requires that at least eighty percent of the units have an occupant over the age of fifty-five years.
The Escondido condominium then met the federal age and occupancy requirements, but there was concern by the managers and directors that it might not always be able to qualify. To try to insure that it would, the required two-thirds of the Board of Directors adopted an amendment (the Fifth Amendment) to the Declaration which prohibits the sale or lease of any unit to a person unless an occupant of the unit is fifty-five years of age or older. However, ECA did not notify RCA nor seek its joinder in the amendment.
ECA took the position that RCA’s joinder was not required because RCA no longer qualified as a “developer” of the Escondido Condominium since it held no units for sale or lease in the ordinary course of business. ECA relied on section 718.301(3), Florida Statutes (1979), which provides:
If a developer holds units for sale in the ordinary course of business, none of the following actions may be taken without approval in writing by the developer:
(a) Assessment of the developer as a unit owner for capital improvements.
(b) Any action by the association that would be detrimental to the sales of units by the developer.
However an increase in assessments for common expenses without discrimination against the developer shall not be deemed detrimental to the sales of the units.
RCA argued that the Fifth Amendment adversely affected its ability to market the planned-for, but-as-yet undeveloped parcels, and that at least those parcels should not be affected by the amendment unless RCA consented to it, and “joined” in the amendment process. RCA pointed out that it qualifies as a “developer” under the definition section of Florida’s Condominium Laws. Section 718.103(13), Florida Statutes (1979) which defines developer as:
[A] person who creates a condominium or offers condominium parcels for sale or lease in the ordinary course of business, but does not include an owner or lessee of a unit who has acquired his unit for his own occupancy, (emphasis added).
And RCA noted it is specifically designated as the “Developer” pursuant to Article I(j) of the Escondido Condominium Declaration.[3]
It seems to us that RCA has the better argument. The language used in section 718.301(3) and section 718.103(13) (1979) do not settle the issue involved in this case. Section 718.103(3) grants a developer specific protections against adverse actions by an association and later amendments to the declaration. They are similar to Article XVII of the Escondido Declaration, but not identical, since arguably they apply only if a developer is currently holding “units for sale in the ordinary course of business.” But, in no manner can we read into section 718.301(3) a prohibition against affording greater protections to a developer in applicable condominium documents.
Similarly, the definition of a developer in section 718.103(13) encompasses RCA. RCA, without dispute, created the condominium in this case even though it now holds no completed unit for sale. But by itself, this section gives RCA no more rights than section 718.301(3) or some other statute might provide.
Article XVII is determinative. It requires RCA’s (or its successor-in-interest’s) joinder or consent to any amendment to the Escondido Condominium Declaration, if such amendment will be binding on RCA’s remaining property interests in the condominium. The article is not limited to RCA remaining actively engaged in selling completed units. Under the language of this article, RCA should be protected regardless of its or the real estate market’s *125 activity so long as it owns property in the condominium it acquired as the developer. Since RCA held the ownership interest of the two undeveloped parcels of the Escondido Condominium at the time the amendment was passed and recorded, and since it did not join or consent thereto, the undeveloped parcels are not bound by that amendment.
Accordingly, we reverse the judgment rendered below and remand for further proceedings consistent with this opinion.
REVERSED and REMANDED.
HARRIS and GRIFFIN, JJ., concur.

. After this lawsuit was filed, RCA sold the two undeveloped parcels to NJ.B. Investments, but has continued the suit for the benefit of its successor in interest.

. Public Law 100-430, Sept. 13, 1988.

. Article I(j) of the Declaration defines “Developer" as "Residential Communities of America and any assignee of its rights hereunder."