645 So.2d 149 (1994)
RESIDENTIAL COMMUNITIES OF AMERICA, et al., Appellant,
v.
ESCONDIDO COMMUNITY ASSOCIATION, et al., Appellee.
No. 93-459.
District Court of Appeal of Florida, Fifth District.
November 18, 1994.
Albert R. Cook and John C. Winfree of Robison, Owen & Cook, P.A., Casselberry, for appellant.
Janet L. Brown of Boehm, Brown, Rigdon, Seacrest & Fischer, P.A., Orlando, for appellee.
THOMPSON, Judge.
Residential Communities of America ("RCA") appeals the entry of an order, in favor of Escondido Community Association ("ECA"), denying its request for damages and attorney's fees. We affirm.
This appearance is the second for this case before this court. Previously, RCA appealed ECA's passing and recording of the fifth amendment to the declaration of condominium which prevented the sale of any condominium to a person unless an occupant of the condominium was 55 years of age or older. This amendment was prospective only but it would have applied to the future development of two undeveloped parcels owned by RCA. This amendment was passed without the approval of the developer, RCA. We reversed, ruling that RCA's approval was *150 necessary. Residential Communities of America v. Escondido Community Ass'n, 603 So.2d 122 (Fla. 5th DCA 1992). Once the case was returned to the lower court, ECA passed and recorded the seventh amendment to the declaration of condominium to eliminate the fifth amendment. RCA then sought attorney's fees and damages in the lower court, asserting that the fifth amendment of ECA amounted to a slander of title on the property. Glusman v. Lieberman, 285 So.2d 29 (Fla. 4th DCA 1973) (attorney's fees are recoverable as expense of litigation to remove the cloud cast upon a title in a slander of title action). In order to prevail, however, RCA had to prove there was a slander of title by ECA.
To establish the elements of slander of title, the plaintiff must prove that the defendant has communicated to a third party a false statement disparaging title which has caused the plaintiff actual damage. Gates v. Utsey, 177 So.2d 486 (Fla. 1st DCA 1965). If a defendant establishes a defense of good faith, or other privilege, however, a plaintiff must prove actual malice. Allington Towers Condominium North, Inc. v. Allington Towers North, Inc., 415 So.2d 118, 119 (Fla. 4th DCA 1982). In the instant case, ECA had a good faith belief, albeit mistaken, that they could enact the fifth amendment without consulting RCA. Moreover, the fifth amendment was neither a false nor malicious statement; it was simply an amendment that did not apply to the RCA parcels, as this court determined. Residential, 603 So.2d at 124-25. Therefore, there was no slander of title. Even if there was a slander of title, RCA was not able to prove that it was damaged by the fifth amendment. RCA is not entitled to attorney's fees. Cf. Atkinson v. Fundaro, 400 So.2d 1324 (Fla. 4th DCA 1981) (attorney's fees can be recovered in a slander of title action even if there are no damages, but the moving party must prove there was a slander of title).
AFFIRMED.
GRIFFIN, J., concurs and concurs specially, with opinion.
HARRIS, C.J., dissents, with opinion.
GRIFFIN, Judge, concurring and concurring specially.
Slander of title is a species of injurious falsehood. I agree with Judge Thompson that the enactment of an amendment to the declaration of condominium in an effort to meet federal age and occupancy requirements did not constitute slander of title. Even if the concept of "injurious falsehood" could be stretched far enough to include the amendment, ECA clearly fits within the broad range of parties privileged to act or speak concerning the property. See William L. Prosser, Handbook of The Law of Torts, § 128 at 924-25 (4th ed. 1971). Given ECA's status, RCA would have to establish malice and, as Judge Thompson correctly notes, there was never any evidence of malice in this case.
HARRIS, Chief Judge, dissenting.
As the majority opinion indicates, even though Residential Communities of America (RCA) had turned over the management of the condominium project to Escondido Community Association (ECA), it continued to own parcels of property within the condominium boundaries subject to future development. For that reason, the condominium Declaration of Covenants and Restrictions provided that no amendment would be effective against RCA unless it joined in the amendment:
Notwithstanding the foregoing [the established procedure for amending the Declaration], an Amendment to this Declaration shall not affect in any manner whatsoever the rights of the Developer unless the Developer joins in said amendment.
In spite of this language, the knowledge of which must be imputed to ECA since this language appears in its official documents, ECA adopted and recorded an amendment intended to substantially restrict the rights of RCA to sell its remaining property. The amendment "slandered" the property interest of RCA by falsely imputing that no unit in the condominium development could thereafter be transferred to anyone unless one of the transferees was at least fifty-five years of age. The fact that this imputation was false *151 was established as the law of this case in Residential Communities v. Escondido Comm., 603 So.2d 122 (Fla. 5th DCA 1992).[1]
The record reveals that RCA was attempting, without success, to sell its remaining property during the period that the wrongful amendment remained "on record." And so long as the amendment was of record, the slander was continuing. Even if there was no direct proof that a sale was not consummated because of the presence of the amendment, at the very least, RCA was damaged to the extent that it was required to sue in order to have the offending amendment removed.
The motive of ECA in trying to bring itself into one of the exceptions to the Fair Housing Act of 1988 is understandable, and the record does not reflect that malice played any part in its decision to record the amendment. But until the supreme court changes the law it adopted (and announced) in Lehman v. Goldin, 160 Fla. 710, 36 So.2d 259 (1948), we are bound by the proposition that neither good motives nor lack of malice (in the absence of privilege) is relevant. Quoting the Restatement of Torts, the Lehman court held that the law applicable is:
One who, without a privilege to do so, publishes matter which is untrue and disparaging to another's property, in land, chattels or intangible things under such circumstances as would lead a reasonable man to foresee that the conduct of a third person as purchaser or lessee thereof might be determined thereby is liable for pecuniary loss resulting to the other from the impairment of vendibility thus caused.
* * * * * *
One who publishes matter disparaging to another's property in land, chattels or intangible things is subject to liability under the [above] rule ... although he
(a) did not intend to influence a third person's conduct as purchaser or lessee of the thing in question
(b) neither knew nor believed the disparaging matter to be false;
(c) did not publish such matter from ill will toward the other or a desire to cause him loss.
Id. 36 So.2d at 260. Lehman was subsequently cited with approval in Old Plantation Corp. v. Maule Industries, Inc., 68 So.2d 180 (Fla. 1953).
Was there privilege in this case? Prosser states:
Usually, however, the privileges is asserted by a defendant who is seeking to protect his own interests. A rival claimant to the property disparaged, in his capacity as such, is recognized as privileged to assert a bonafide claim by any appropriate means of publication. (Emphasis added.)
W. Prosser, Law of Torts, § 128 (4th ed. 1971).
I believe it is stretching the doctrine of privilege too far to apply it to a situation in which one, in contravention of the express terms of its own covenants and restrictions, amends its Declaration of Covenants and Restrictions contrary to and in excess of its authority.
Because the record will not justify a finding that ECA had a "privilege" to record the amendment without the approval of RCA, I would hold that RCA should recover its costs in having the amendment removed from record. See Colen v. Patterson, 436 So.2d 182 (Fla. 2d DCA), rev. denied, 438 So.2d 831 (Fla. 1983).
NOTES
[1] A "falsehood" is merely "an untrue statement." The recorded amendment to the Declaration of Covenants and Restrictions falsely indicated that only purchasers, at least one of which was 55 years of age or older, were eligible to purchase. Our previous opinion established this as a "falsehood."