# In the

# United States Court of Appeals

## For the Seventh Circuit

No. 08-1315

IN RE:

FRANK GALLO,

*Debtor-Appellee*.

APPEAL OF:

GILLIAN A. EMERY

Appeal from the United States District Court
for the Central District of Illinois.
No. 2:07-cv-02182-MPM-DGB—**Michael P. McCuskey**, *Chief Judge*.

ARGUED APRIL 7, 2009—DECIDED JULY 20, 2009

Before POSNER, RIPPLE and WOOD, *Circuit Judges*.

RIPPLE, *Circuit Judge*. Frank Gallo initiated a bankruptcy proceeding in the United States Bankruptcy Court for the Central District of Illinois under 11 U.S.C. § 1301 et seq. His former wife, Gillian Emery, filed a proof of claim

with the bankruptcy court for slander of title.[1] *See* 11 U.S.C. § 553. Mr. Gallo later filed a motion under 11 U.S.C. § 542(b), seeking an order requiring Ms. Emery to pay the bankruptcy trustee the amount that she owed under an Illinois marriage dissolution judgment. The bankruptcy court entered an order denying Ms. Emery's proof of claim and directing her to pay $125,062.97 to the bankruptcy trustee; the district court later affirmed. For the reasons set forth in this opinion, we affirm the judgment of the district court.

# I

## BACKGROUND

### A.

In 2002, Frank Gallo and Gillian Emery initiated a divorce proceeding in the Circuit Court of the Sixth Judicial Circuit, Champaign County, Illinois ("Illinois circuit court"). During this time, Mr. Gallo also had a bankruptcy action pending under Chapter 13 of the Bankruptcy Code, 11 U.S.C. § 1301 et seq. On July 27, 2004, the Illinois circuit court entered a dissolution order awarding Ms. Emery property on Sanibel Island, Florida ("the Sanibel Property"). The order specified that Ms. Emery was to receive the property "free and clear of any interest [of Mr. Gallo]." R.3, Ex. 7 at 11. The parties

---

[1] This tort is also referred to as "disparagement of title." *Palm Devs., Inc. v. Ridgdill & Sons, Inc.*, No. 2:08-cv-322-FtM-DNF, 2009 WL 513027, at *4 (M.D. Fla. Feb. 27, 2009).

stipulated that, at the time of the Illinois circuit court's order, the Sanibel Property had a value of $310,000. R.3, Ex. 7 at 3. The court further directed Ms. Emery to pay the bankruptcy trustee a total of $125,062.97.[2]

Mr. Gallo transferred his interest in the Sanibel Property to Ms. Emery, but Ms. Emery failed to make any payments to the bankruptcy trustee as required by the Illinois circuit court's dissolution order. Consequently, on November 29, 2004, Mr. Gallo's attorney filed a lis pendens notice against the Sanibel Property.[3]

---

[2] Specifically, the court ordered Ms. Emery to pay the bankruptcy trustee: (1) $27,087.50 for dissipated art work; (2) $43,388.15 for the balance due on a loan; (3) approximately $41,144 for obligations owed to the Internal Revenue Service; (4) $7,393.32 in marital credit card debt; and (5) $6,050 for the value of a boat retained by Ms. Emery. The bankruptcy court granted relief from the automatic stay in the bankruptcy proceeding to allow the Illinois circuit court to enter judgment regarding the distribution of marital assets and liabilities. The bankruptcy proceeding was later dismissed voluntarily by Mr. Gallo just prior to the filing of his present bankruptcy petition.

[3] Under Florida law, the acts of Mr. Gallo's attorney are imputed to Mr. Gallo. *See Traylor v. State*, 596 So. 2d 957, 979 (Fla. 1992) (Kogan, J., concurring in part, dissenting in part) ("Florida law, for example, has long been settled that the acts of an attorney are imputed to the client so completely that the attorney legally is the alter ego of the client except in extreme circumstances . . . ."); *State v. Daniels*, 826 So. 2d 1045, 1047 (Fla. Dist. Ct. App. 2002) (citing *Traylor* concurrence). The bankruptcy

(continued...)

Ms. Emery entered into negotiations with a property developer, Adam Menkus. She claims that he offered her $710,000 to purchase the Sanibel Property, but that the sale fell through when the parties discovered the lis pendens filed by Mr. Gallo. On February 23, 2005, Ms. Emery received a $350,000 loan, secured by a mortgage on the Sanibel Property; she used the proceeds toward the purchase of a home worth $705,000.

On June 29, 2005, Ms. Emery obtained a default judgment from the Circuit Court of the Twentieth Judicial Circuit for Lee County, Florida ("Florida circuit court"), quieting title to the Sanibel Property and discharging the lis pendens. On September 16, 2005, Ms. Emery sold the Sanibel Property for $490,000.

## B.

On June 30, 2005, Mr. Gallo filed the present action, a second Chapter 13 bankruptcy proceeding. A major part of the funding of Mr. Gallo's Chapter 13 plan relied upon Ms. Emery's payment of the funds that the Illinois circuit court had ordered her to pay Mr. Gallo.

In this proceeding, Ms. Emery filed a proof of claim for slander of title under Florida law. *See* 11 U.S.C. § 553. The

---

[3]  (...continued)
court therefore found that, although Mr. Gallo did not have knowledge that his attorney was filing a lis pendens notice, there was no evidence that the attorney acted outside the scope of his implied authority. *In re Frank Gallo,* No. 05-92345 (Bankr. C.D. Ill. Aug. 29, 2007).

basis for this claim was the lis pendens notice filed by Mr. Gallo; Ms. Emery claimed that the filing of the lis pendens notice resulted in her losing the opportunity to sell her property to Menkus. Mr. Gallo sought an order that would direct Ms. Emery to pay the amount that she owed the estate under the Illinois circuit court's dissolution judgment. *See* 11 U.S.C. § 542(b). Ms. Emery attempted to reduce the amount she owed by the amount of damage she sustained from the alleged slander of title. In its subsequent ruling, the bankruptcy court denied Ms. Emery's proof of claim and granted the turnover order requested by Mr. Gallo. The district court affirmed the bankruptcy court's order. Ms. Emery filed this timely appeal.

## II

## DISCUSSION

We review factual findings of the bankruptcy court for clear error and review conclusions of law de novo. *In re Bonnett*, 895 F.2d 1155, 1157 (7th Cir. 1989).

The ultimate issue that we must decide is whether the bankruptcy court and the district court were correct in holding that Ms. Emery's obligation to pay the Chapter 13 trustee under the terms of the Illinois circuit court order should not be offset by the allowance of her proof of claim for slander of title against Mr. Gallo. To resolve this contention, we must address two issues raised by Ms. Emery: (1) whether she has a valid claim for slander of title and (2) whether the bankruptcy court erred in

ordering the turnover despite her alleged inability to pay the amount in question.

## A.

Ms. Emery submits that Mr. Gallo committed slander of title by improperly filing the lis pendens notice. The notice was false, she claims, because Mr. Gallo does not have a cognizable claim to the Sanibel Property based on the money judgment from the Illinois circuit court. She observes that the court awarded her the Sanibel Property "free and clear of any interest [of Mr. Gallo]" and that the Florida circuit court quieted title.[4] R.3, Ex. 7 at 11. Ms. Emery contends that Mr. Gallo did not establish that he acted in good faith in filing the lis pendens notice because he presented no evidence regarding his motive

---

[4] Ms. Emery claims that these two decisions bind this court. However, the Illinois circuit court did not address what the status of the Sanibel Property would be if Ms. Emery failed to comply with the dissolution order. The Florida circuit court decision does not have preclusive effect on this court because it was a default judgment. *See Meyer v. Rigdon*, 36 F.3d 1375, 1379 (7th Cir. 1994) (noting that "a default judgment is normally not given preclusive effect under the collateral estoppel doctrine because no issue has been actually litigated") (citation and quotation marks omitted). These cases do not address the issue before us, which is whether Mr. Gallo committed the tort of slander of title at the time his attorney filed the lis pendens. As we shall demonstrate in the text that follows, the fact that Ms. Emery had clear title before the filing of the lis pendens and after the Florida circuit court's quiet-title action is not analytically relevant to our resolution of that issue.

for doing so and because he lacked a bona fide claim to the Sanibel Property. Specifically, Ms. Emery maintains that Mr. Gallo filed the lis pendens without legal justification because, at the time of filing, there was no ongoing litigation regarding the Sanibel Property. She further contends that she suffered damages because Menkus would have paid her $710,000 for the Sanibel Property if it had not been subject to a lis pendens.

We must decide whether Mr. Gallo committed slander of title when he filed a lis pendens against the Sanibel Property. To establish a claim for slander or disparagement of title under Florida law,[5] a party must show the following:

> (1) A falsehood (2) has been published, or communicated to a third person (3) when the defendant-publisher knows or reasonably should know that it will likely result in inducing others not to deal with the plaintiff and (4) in fact, the falsehood does play a material and substantial part in inducing others not to deal with the plaintiff; and (5) special damages are proximately caused as a result of the published falsehood.

*Palm Devs., Inc. v. Ridgdill & Sons, Inc.*, No. 2:08-cv-322-FtM-DNF, 2009 WL 513027, at *4 (M.D. Fla. Feb. 27, 2009) (quoting *McAllister v. Breakers Seville Ass'n*, 981 So. 2d 566, 573 (Fla. Dist. Ct. App. 2008)). If Ms. Emery establishes these elements, the burden would

---

[5] The parties do not dispute that Florida law governs Ms. Emery's slander of title claim.

shift to Mr. Gallo to raise an affirmative defense of privilege, such as good faith. *See Residential Cmtys. of Am. v. Escondido Cmty. Ass'n*, 645 So. 2d 149, 150 (Fla. Dist. Ct. App. 1994). If Mr. Gallo, in turn, meets his burden, the burden then would shift back to Ms. Emery to prove actual malice. *See id*. Whether Mr. Gallo acted in good faith is a question of fact. *See Allington Towers Condo. N. v. Allington Towers N.*, 415 So. 2d 118, 119 (Fla. Dist. Ct. App. 1982).

We first must consider whether the lis pendens constitutes a falsehood. The Supreme Court of Florida has said that "[t]he purpose of a notice of lis pendens is to alert creditors, prospective purchasers and others to the fact that the title to a particular piece of real property is involved in litigation." *S & T Builders v. Globe Props.*, 944 So. 2d 302, 303 n.1 (Fla. 2006) (citation and quotation marks omitted); *see also* Fla. Stat. § 48.23 (2008). Lis pendens "protect[s] the plaintiff from intervening liens that could impair any property rights claimed and also from possible extinguishment of the plaintiff's unrecorded equitable lien." *Chiusolo v. Kennedy*, 614 So. 2d 491, 492 (Fla. 1993). It is proper where "the proponent can establish a fair nexus between the apparent legal or equitable ownership of the property and the dispute embodied in the lawsuit." *Id*.

Ms. Emery maintains that the lis pendens notice was false because Mr. Gallo did not have an equitable interest in the Sanibel Property. The transfer of the Sanibel Property, as well as the payment to the bankruptcy trustee, both were governed by the same

dissolution order. At the time the Illinois circuit court entered this order, it noted that the allocation of marital property was "unequal" and favored Ms. Emery, but noted that "the inequity of the distribution" would be "somewhat offset" by the payments Ms. Emery would make to the bankruptcy trustee to fund Mr. Gallo's Chapter 13 Plan of Reorganization in the then-pending bankruptcy, R.3, Ex. 7 at 14; the payment to the trustee was necessary to make the distribution of assets more equitable. The money that Ms. Emery owed Mr. Gallo, therefore, was very clearly related to the award of the Sanibel Property. By November 2004, Mr. Gallo had complied with the order by transferring his interest in the Sanibel Property to Ms. Emery; however, Ms. Emery had not satisfied her responsibilities under the order because she had failed to pay the bankruptcy trustee $125,062.97. Mr. Gallo has an equitable interest in the Sanibel Property and could have sought a lien on it in a Florida state court as a remedy for Ms. Emery's non-compliance with the dissolution judgment. *See Wolk v. Leak*, 70 So. 2d 498, 501 (Fla. 1954) (affirming circuit court's decision to place an equitable lien on the former husband's property where the former husband owed alimony and child support under an Ohio divorce decree).[6]

---

[6] An out-of-state court does not have in rem jurisdiction over property in Florida, although it may place a constructive trust on such property. *Hirchert v. Hirchert Family Trust*, 988 So. 2d 63, 65 (Fla. Dist. Ct. App. 2008). Because "[t]he imposition of an equitable lien is considered an *in rem* action," an Illinois court

(continued...)

Ms. Emery also submits that Mr. Gallo filed the lis pendens at a time when the Sanibel Property was not the subject of litigation. She maintains that, under Florida law, a lis pendens may not be filed in such circumstances. The bankruptcy court took the view that "it was altogether possible that litigation could have ensued" in the Illinois circuit court, and that Mr. Gallo could have sought to rescind the transfer of title of the Sanibel Property. *In re Gallo*, No. 05-92345 (Bankr. N.D. Ill. Aug. 29, 2007).

As we have noted, the purpose of lis pendens is to alert others to the fact that the title to a piece of real property is the subject of litigation. *See S & T Builders*, 944 So. 2d at 303 n.1. Furthermore, Florida Statute § 48.23(1)(a) (2008) states:

> No action in any of the state or federal courts in this state operates as a lis pendens on any real or personal property involved therein or to be affected thereby

---

[6] (...continued)
would not have authority to place an equitable lien on Florida property. *In re Scott*, 347 B.R. 917, 919 (Bankr. M.D. Fla. 2006). However, the Illinois circuit court could render a judgment affecting indirectly the Sanibel Property because it had jurisdiction over both the parties to the dissolution and the property settlement action in Illinois, *see Iannazzo v. Stanson*, 927 So. 2d 1005, 1007 (Fla. Dist. Ct. App. 2006). *See also Fall v. Eastin*, 215 U.S. 1, 8 (1909) ("A court of equity, having authority to act upon the person, may indirectly act upon real estate in another state, through the instrumentality of this authority over the person.").

until a notice of the commencement of the action is recorded in the office of the clerk of the circuit court of the county where the property is, which notice contains the names of the parties, the time of institution of the action, the name of the court in which it is pending, a description of the property involved or to be affected, and a statement of the relief sought as to the property.[7]

We do not believe that this language allows for a lis pendens notice to be filed based on the mere possibility of future litigation. *See generally* 51 Am. Jur. 2d Lis Pendens § 50 (observing that in some states, "a notice of lis pendens filed before the commencement of the action is a nullity"). Moreover, there are apparently substantial constraints under Florida law as to when property can be considered sufficiently related to the underlying litigation to be the proper subject of a lis pendens notice. It appears to be established that a lis pendens notice can be issued to give notice of the

---

[7] This subsection has been amended, effective July 1, 2009. It now reads:

> (1)(a) An action in any of the state or federal courts in this state operates as a lis pendens on any real or personal property involved therein or to be affected thereby only if a notice of lis pendens is recorded in the official records of the county where the property is located and such notice has not expired pursuant to subsection (2) or been withdrawn or discharged.

Fla. Stat. § 48.23 (West July 1, 2009).

pendency of an action for dissolution of a marriage and equitable division of property. *See Seligman v. N. Am. Mortgage Co.*, 781 So. 2d 1159, 1163 (Fla. Dist. Ct. App. 2001) (holding that wife's notice of lis pendens on marital property was properly filed and gave the wife priority over a subsequently filed mortgage). It is less clear, however, that a lis pendens is the proper device for a spouse to give notice to third parties of intent to enforce an equity payment against other marital property awarded with clear title to the other spouse. *See Brown v. Brown*, 732 So. 2d 1169, 1171 (Fla. Dist. Ct. App. 1999) ("And while the appellant failed to make the full equity payment specified in the agreement, a *lis pendens* does not pertain upon a payment which is merely related to but which does not affect the alienability of the subject property."). The rule articulated in *Brown* seems to apply when the action seeks to enforce a foreign judgment against property in Florida. *See Tortu v. Tortu*, 430 So. 2d 531, 532 (Fla. Dist. Ct. App. 1983) ("[A] complaint which will not support a claim against the specific property at issue cannot provide a basis for tying it up by filing of notice of *lis pendens*.") (citations and quotation marks omitted).

However, even if we assume that the notice of lis pendens was filed in error, that conclusion does not establish slander of title. *See Allington Towers*, 415 So. 2d at 119. Slander of title is subject to an affirmative defense of good faith. *Id.* Mr. Gallo asserted such a defense when he claimed that he had a credible equitable right in the Sanibel Property, a right he was attempting to enforce in the Illinois circuit court and subject to satisfaction

through a lien on the Sanibel Property. *Cf. Residential Communities of Am.*, 645 So. 2d at 150 (holding that appellee did not act with actual malice because, although it did not have authority to unilaterally enact an amendment to a condominium declaration, it had a good faith belief that it acted permissibly). There is, moreover, no evidence that he acted with actual malice when he filed the notice.[8] We believe that the bankruptcy court was on solid ground, after hearing the witnesses and evaluating the evidence, to determine that Mr. Gallo's good faith had been established and that there was no showing of malice on his part.

---

[8] In commenting on the scope of the privilege created by a good faith defense to a slander of title action, one Florida court relied upon Prosser's Law of Torts:

> A rival claimant to the property disparaged, in his capacity as such, is recognized as privileged to assert a bona fide claim by any appropriate means of publication . . . [.] The privilege is uniformly held, however, to be a qualified one, and it is defeated if the defendant's motive is shown to be solely a desire to do harm, or if it is found that he did not honestly believe his statements to be true, or that the publication of the statement was excessive. A few cases have gone further and have said that he must have reasonable grounds for believing his disparaging words to be the truth; but the better view, which is now more generally accepted, is that a genuine belief in their truth is sufficient, however unfounded or unreasonable it may be.

*Allington Towers Condo. N. v. Allington Towers N.*, 415 So. 2d 118, 119-20 (Fla. Dist. Ct. App. 1982) (quoting W. Prosser, Law of Torts, § 128 (4th ed. 1971)) (alteration in original).

The bankruptcy court also concluded that Ms. Emery has not carried her burden of establishing, by a preponderance of the evidence, that she has suffered damages from the statement in the lis pendens notice. On this record, we believe that the bankruptcy court's determination must be sustained. Ms. Emery claims that Menkus offered her $710,000 for the sale of her home, but that this opportunity was lost because of Mr. Gallo's false statement that the Sanibel Property was subject to ongoing litigation. As the bankruptcy court noted, however, she has not been able to produce a written contract with respect to that transaction.[9] Furthermore, the evidence

---

[9] At trial, Ms. Emery testified that there was a written contract, although at her deposition she had testified that she did not remember a written contract. At trial she testified as follows:

BY MR. BADDLEY:

   Q. And you don't remember there being a contract with Mr. Menkes, do you?

   A. I remember actually there was a contract, but I couldn't find it.

   Q. Okay, well, I'm going to read from page 34, beginning on line 25—line 23.

      "Did you sign a contract?

      A. We didn't use real estate agents."

And then I said,

"My question is whether he signed a contract,"

And you answered:

(continued...)

in the record suggests strongly that any such offer would have been far in excess of the Sanibel Property's value. Ms. Emery sold it in September 2005 for $490,000. The record shows that, in February of that year, Ms. Emery had secured a mortgage of $350,000 on the Sanibel Property despite the lis pendens notice. The district court aptly characterized Ms. Emery's proof of damages as "unconvincing," and we agree with the district court's conclusion that the decision of the bankruptcy court must be sustained.

We also see no basis for awarding attorneys' fees to Ms. Emery for her action to quiet title in the Florida courts. Since she has not established a prima facie case for slander of title in this bankruptcy action, she certainly cannot establish a right to attorneys' fees on the basis of this litigation. Nor do we believe that the default judgment to quiet title in the Florida circuit court can be deemed a basis for her seeking attorneys' fees here. She has offered no proof that the Florida court awarded those fees. Moreover, her damages would be limited to the amount of a surety bond and the record contains no evidence of the existence of such a bond or its amount. *See S & T Builders*, 944 So. 2d at 305-06.

---

[9] (...continued)

> "I don't remember a contract."

Did I read that correctly?

> A. You remem—yes, you read it correctly.

Tr. of Hearing on Debtor's Motion for Turnover at 32.

**B.**

Ms. Emery also submits that the bankruptcy court erred in granting Mr. Gallo's motion for turnover because the court failed to establish that she was able to make the payment. Ms. Emery maintains that she has no tangible funds available and that the real estate she owns in Florida is exempt from creditors under the Florida homestead exemption.

The bankruptcy court properly granted Mr. Gallo's motion for turnover. It is undisputed that the Illinois circuit court's dissolution judgment is a valid final order. *See* 11 U.S.C. § 542(b) ("an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee"). Moreover, Ms. Emery has failed to establish that the bankruptcy court had any obligation to ensure her ability to pay the judgment before granting the turnover motion. If the bankruptcy court later attempts to hold Ms. Emery in civil contempt for failing to comply with its order, then Ms. Emery can put forth evidence that she attempted to comply with the order, but lacked the financial resources to do so. *See Am. Fletcher Mortgage Co. v. Bass*, 688 F.2d 513, 517 (7th Cir. 1982) ("The district court may find a defendant in civil contempt if he has not been reasonably diligent and energetic in attempting to accomplish what was ordered.") (citation and quotation marks omitted).

Ms. Emery's attempt to raise the homestead exemption is premature. At this time, the bankruptcy court has not attempted to place a lien on Ms. Emery's home or to

force her to sell her home to satisfy the turnover order.[10] Consequently, whether the homestead exemption is applicable to Ms. Emery is an issue that is not yet ripe for review.[11]

---

[10] *See Orange Brevard Plumbing & Heating Co. v. La Croix*, 137 So. 2d 201, 204 (Fla. 1962) (noting that the Florida Constitution homestead exemption's "design and purpose is to benefit the debtor by securing to him his homestead beyond all liability from forced sale under process of any court"); *Rossano v. Britesmile, Inc.*, 919 So. 2d 551, 552 (Fla. Dist. Ct. App. 2005) ("[T]he proceeds of a voluntary sale of a homestead to be exempt from the claims of creditors just as the homestead itself is exempt if, and only if, the vendor shows, by a preponderance of the evidence an abiding good faith intention prior to and at the time of the sale of the homestead to reinvest the proceeds thereof in another homestead within a reasonable time.") (citations and quotation marks omitted). *But see Palm Beach Sav. & Loan Ass'n v. Fishbein*, 619 So. 2d 267, 270 (Fla. 1993) (noting that the homestead exemption should not be applied where the homeowner acted fraudulently).

[11] *See Wis. Cent., Ltd. v. Shannon*, 539 F.3d 751, 759 (7th Cir. 2008) (observing that ripeness "is predicated on the central perception . . . that courts should not render decisions absent a genuine need to resolve a real dispute" and further noting that "[c]ases are unripe when the parties point only to hypothetical, speculative, or illusory disputes as opposed to actual, concrete conflicts") (citations and quotation marks omitted) (alterations in original).

## Conclusion

For the foregoing reasons, the judgment of the district court is affirmed.

AFFIRMED